**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:** Glucagon-like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation | **MDL DOCKET NO. 3094** |

**INTERESTED PARTY RESPONSE IN SUPPORT OF MOTION FOR TRANSFER OF
ACTIONS TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF LOUISIANA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED
OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**I.    INTRODUCTION**

Brooke Lewis, plaintiff in *Brooke Lewis v. Novo Nordisk A/S, Novo Nordisk North America Operations A/S, Novo Nordisk US Holdings Inc., Novo Nordisk US Commercial Holdings Inc., Novo Nordisk Inc., Novo Nordisk Research Center Seattle, Inc., and Novo Nordisk Pharmaceutical Industries LP* (hereinafter collectively "Defendants" or "Norvo Nordisk"), Civil Action No. 5:23-cv-01763 (W.D. La.), hereby files this Interested Party Response in Support of Motion for Transfer of Actions to the United States District court for the Western District of Louisiana pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.[1] Plaintiff, Brooke Lewis, joins in the arguments of Movant that this litigation should be centralized. The actions assert the same or similar claims based on common factual allegations and will involve common legal theories. Centralized or coordinated pretrial treatment under Section 1407 will assist the parties and the courts in avoiding duplicative rulings on the common issues of fact and law in dispute, promote just and efficient resolution of the litigation, and serve the convenience of the parties and the witnesses.

---

[1] *Lewis v. Norvo Nordisk A/S, et al.* was filed after the Motion for Consolidation and Transfer and therefore was not listed within the Motion. A Notice of Related Action was filed December 19, 2023. [Dkt. No. 27]. *See also* Errata [Dkt. No. 39], Amended Certificate of Service [Dkt. No. 40].

Centralization is appropriate where common questions of fact and law are shared among all cases sought to be centralized, as they are here. Plaintiff Lewis echoes Movant's arguments that the United States District Court for the Western District of Louisiana is a suitable Court to manage this litigation and respectfully requests an Order transferring the Glucagon-Like Peptide-1 Receptor Agonists ("GLP-1 RAs") Products Liability actions to the Western District of Louisiana for coordinated and pretrial proceedings.

II.     **BACKGROUND AND STATUS**

**A. Defendants' Glucagon-like Peptide-1 Receptor Agonists**

Semaglutide,[2] liraglutide,[3] tirzepatide,[4] and dulaglutide[5] belong to a class of drugs known GLP-1 RAs. These activate the GLP-1 receptor in the pancreas to stimulate the release of insulin and suppress glucagon, leading to a reduction in blood glucose levels.

While manufacturers acknowledge GLP-1 RA gastrointestinal side effects, these actions allege manufacturers have misrepresented these drugs as safe and downplayed the severity of gastrointestinal events including gastroparesis (stomach paralysis), ileus (lack of movement through intestines) and intestinal pseudo-obstruction caused by their GLP-1 RAs and have failed to adequately warn prescribing physicians and patients. Instead, these manufacturers have spent millions of dollars promoting their GLP-1 RAs to prescribing physicians and through direct-to-consumer marketing campaigns.

---

[22] Semaglutide is marketed by Novo Nordisk as Ozempic (launched December 2017), Rybelsus (launched Fall 2019), and Wegovy (launched June 2021).
[3] Liraglutide is marketed by Novo Nordisk as Saxenda, inter alia (launched Winter 2014).
[4] Tirzepatide is marketed by Eli Lilly as Mounjaro and was launched May 2022.
[5] Dulaglutide is marketed by Eli Lilly as Trulicity and was launched Fall 2014.

### B. Plaintiff Brooke Lewis' Cause of Action

The undersigned law firm represents Plaintiff in the case *Lewis v. Novo Nordisk, et al.*, Civil Action No. 5:23-cv-01763, filed December 15, 2023, in the Western District of Louisiana. In Plaintiff's case, she seeks damages for injuries sustained to herself through use of Defendants' GLP-1 RA drug, Ozempic. The prescribed drug was designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed by Defendants. Specifically, Plaintiff developed gastroparesis, severe or permanent stomach paralysis, also known as delayed gastric emptying and often documented as gastric stasis or gastric obstruction.

In the Western District of Louisiana, where Plaintiff's action is currently pending, there are approximately eleven (11) GLP-1 RA actions pending. Further, there are approximately twenty-four (24) other GLP-1 RA actions filed across several districts with many more cases expected to be filed. These actions involve common questions of fact and law and should therefore be transferred to one district for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

### C. The GLP-1 RA Actions

As of December 28, 2023, there are approximately thirty-five (35) civil actions pending in fourteen (14) different federal district courts across the U.S. where Plaintiffs' actions involve claims for personal injuries and damages alleging they were injured after using GLP-1 RAs. These actions are being handled by approximately nineteen (19) different law firms. Plaintiffs in the GLP-1 RA actions seek to recover under theories of negligence, strict liability, breach of warranty, fraudulent misrepresentation, negligent misrepresentation, and violations of state statutes. In addition to the thirty-five (35) civil actions already filed, undersigned counsel and

other firms across the country are investigating many more GLP-1 RA-related cases which are likely to be filed.

The fourteen (14) federal district courts include: U.S. District Court for the District of Idaho, U.S. District Court for the Southern District of Illinois, U.S. District Court for the Southern District of Iowa, U.S. District for the Western, District of Louisiana, U.S. District Court for the Western District of Louisiana, U.S. District Court for the Northern District of Mississippi, U.S. District Court for Nebraska, U.S. District Court for the Eastern District of New York, U.S. District Court for the Western District of New York, U.S. District Court for the Eastern District of Oklahoma, U.S. District Court for the Eastern District of Pennsylvania, U.S. District Court for the District of South Dakota, U.S. District Court for the District of Utah, and U.S. District Court for the Western District of Wisconsin. Plaintiffs in the actions are represented by the following separate law firms: Cox, Cox, Filo, Camel, Wilson & Brown, LLC; Dicello Levitt LLP; Gori Law Firm, PC; Douglas & London, PC; Feldman & Pinto, LLC; Goza & Honnold, LLC; Johnson Becker, PLLC; Laborde Earlies Law Firm; Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey, PA; Lundy LLP; Martzell, Bickford & Centola; Morgan & Morgan; Morrow, Morrow, Ryan, Bassett & Haik; Motley Rice LLC; Parker Waichman LLP; Pogust Goodhead, LLC; Richmond Vona, LLC; Smolen Law, PLLC; and The Townsley Law Firm.

Due to the widespread nature of the harms caused by the GLP-1 RA manufacturers' failure to adequately warn, Plaintiff supports the centralization of her claim, and all others similarly situated, in the United States District Court for the Western District of Louisiana.

### III. ARGUMENT

#### A. Transfer and Centralization Pursuant to 28 U.S.C. § 1407 is Appropriate.

Plaintiff Lewis agrees transfer, coordination, and consolidation of these actions is appropriate as many common questions of fact and law exist. The actions will involve much of the same core discovery, fact witnesses, and general liability and causation experts. "The purpose of § 1407. . . is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Centralization intended to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017). Section 1407(a) authorizes the transfer of civil actions pending in different federal district courts to a single federal district court for coordinated or centralized pretrial proceedings so long as the JPML determines that: (1) the lawsuits involve common questions of fact; (2) transfer and consolidation will serve the convenience of the parties and witnesses, and (3) transfer and consolidation will promote the just and efficient conduct of the litigation. All three requirements are met here.

The actions before the JPML arise from the same or substantially similar facts and allegations including the following:

(1) Plaintiffs were prescribed and used one or more GLP-1 RA drug that resulted in gastrointestinal injury;
(2) Plaintiffs' prescribing physicians relied upon Defendants' numerous representations regarding the safety and efficacy of their GPL-1 RA drugs;
(3) Defendants knew or should have known of the serious risk of gastrointestinal injuries;

 (4) Defendants failed to adequately warn prescribing physicians of the severity and extent of the risks posed by use of their drugs;

 (5) Had Defendants adequately warned Plaintiffs' prescribing physicians, the doctors would have modified their prescribing practices, declined to prescribe the GLP-1 RA drugs, or more closely monitored patients taking the drugs and then discontinued the drugs.

In addition to these actions involving common questions of fact regarding whether the GLP-1 RAs can cause gastrointestinal injuries and whether Defendants failed in their duties as manufacturers, including to provide adequate warnings, "centralization would eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *In re Actos Prods. Liab. Litig.*, 840 F. Supp. 2d 1356 (J.P.M.L. 2011). Particularly here, the actions present common, complex factual issues related to the clinical trials, regulatory approval, manufacturing, pharmacovigilance, labeling and marketing of GLP-1 RAs and Defendants' knowledge of the drugs' adverse effects. Coordination of pretrial proceedings is necessary to avoid duplicative discovery, unduly burdensome discovery obligations, and inconsistent rulings on pretrial motions. Centralization will preserve resources of the parties, counsel, and the judiciary. Accordingly, the Panel's transfer of the actions will promote the just and efficient conduct of the actions which are suitable for transfer, coordination, and centralization.

 Further, informal coordination is not a practical alternative to centralization for these actions. "[T]he number of actions, districts, and involved counsel, and the complexity of the litigation, make effective coordination on an informal basis impracticable." *In re Uber Tech., Inc., Data Breach Litig.*, 304 F.Supp. 1351, 1354 (J.P.M.L. 2018) (informal coordination was not a practicable alternative to centralization where ten actions, with a potential for seven more, were pending in nine districts).

### B. The Western District of Louisiana is a Suitable Venue for These Cases.

As shown above, centralization is appropriate for these cases. The next issue for the Panel to consider is which forum is most suitable for centralization. Plaintiff Lewis agrees with Movant and requests that the JPML transfer all related actions to the United States District Court for the Western District of Louisiana for centralized pretrial proceedings before the Honorable James D. Cain, Jr.

The Western District of Louisiana has sufficient resources to oversee these cases both effectively and efficiently. As noted by Movant, the median time interval within which the Western District of Louisiana resolves cases from filing to resolution is only 9.4 months. Additionally, at this time, no MDLs are pending in the Western District of Louisiana.

Judge Cain, a well-respected jurist, has already been assigned no less than six cases, including the first GLP-1 RA case filed in the country (*Bjorklund*) which involves both of the two GLP-1 RA manufacturers (Novo Nordisk and Eli Lilly). Since its filing, Judge Cain has advanced the *Bjorklund* matter and is providing prompt attention to the GLP-1 RA cases overall as more fully addressed by Movant.

Additionally, Judge Cain has experience in multi-plaintiff litigation, having managed a tremendous docket in connection with the devastation of Hurricanes Laura and Delta as more fully discussed by Movant including statistics the undersigned believes are worthy of restating. Since the 2020 Hurricanes, Judge Cain has presided over 6,877 hurricane cases,[6] handling 22%

---

[6] *Federal insurance litigation in Louisiana tops in U.S., new report finds*, Louisiana Record (June 15, 2023) (https://louisianarecord.com/stories/644285105-federal-insurance-litigation-in-louisiana-tops-in-u-s-new-report-finds) (last visited 12/19/23).

of all insurance lawsuits filed in the nation in 2022,[7] and 40% of all insurance lawsuits filed during the month of August 2022 (a month with a record-breaking 4,042 insurances cases filed nationwide)[8]

In connection with the large number of Hurricane Cases, Judge Cain developed a Case Management Order to provide for uniform and streamlined discovery, court-organized mediation, and prompt attention by the Court to any cases that did not resolve through the CMO process.[9]  As reported at a recent CLE, 5,920 cases have resolved through the CMO process out of a total of the 7,468 cases filed (1,036 are stayed due the court's suspension of an allegedly unethical plaintiff's firm).[10]

In addition to his experience and ability to manage multi-plaintiff litigation, Judge Cain has the resources to oversee these actions as it is believed the hurricane litigation before him is coming to a close.

Finally, the Western District of Louisiana provides a convenient and accessible transfer location. There are multiple nonstop flights into Lake Charles daily from IAH (Houston) and DFW (Dallas), both of which can be reached nonstop from airports across the United States.[11] Lake Charles is also a reasonable driving distance from both Houston and New Orleans.

---

[7] *Insurance Lawsuits Skyrocket in Communities Hit Hard by Extreme Weather Events*, Syracuse University Transactional Records Access Clearinghouse (https://trac.syr.edu/reports/700/) (last visited 12/19/23).
[8] *Ground Zero: One in Five Federal Insurance Lawsuits Nationwide Filed in Lake Charles,* The Advocate (Oct. 21, 2022) (https://www.theadvocate.com/lake_charles/ground-zero-one-in-five-federal-insurance-lawsuits-nationwide-filed-in-lake-charles/article_1201142e-5160-11ed-bf00-579c5dc1e8f9.html) (last visited 12/19/23).
[9] http://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Laura%20Delta%20-%20CMO_0.pdf (last visited 12/19/23).
[10] Ninety percent settled in the early mediations and greater than 99 percent settled before trial.
[11] There are approximately 111 domestic direct flights into IAH daily. *Direct (non-stop) flights to Houston (IAH)*. Direct (non-stop) flights to Houston (IAH) - FlightConnections.com (Aug. 14, 2020), available at https://www.flightconnections.com/flights-to-houston-iah (last visited Dec.

## IV. CONCLUSION

WHEREFORE, Plaintiff Lewis respectfully requests, pursuant to 28 U.S.C. § 1407, that this Honorable Panel enter an Order to transfer and consolidate the pending actions, as well as any GLP-1 RA Product Liability related actions that might later be filed, to the United States District Court for the Western District of Louisiana for coordinated and consolidated pretrial proceedings.

Dated: December 28, 2023

Respectfully Submitted,

**LUNDY LLP**

_____
MATTHEW E. LUNDY (#18988)
KRISTIE M. HIGHTOWER (#31782)
RUDIE R. SOILEAU, JR. (#2119)
501 Broad Street
Lake Charles, LA 70601
Tel: 337-439-0707
Fax: 337-439-1029
mlundy@lundyllp.com
khightower@lundyllp.com
rudiesoileau@gmail.com

*Counsel for Plaintiff, Brooke Lewis*

---

26, 2023). There are approximately 187 domestic direct flights into DFW daily. *Direct (non-stop) flights to Dallas-Fort Worth (DFW)*. Direct (non-stop) flights to Dallas-Fort Worth (DFW) - FlightConnections.com (Aug. 14, 2020), available at https://www.flightconnections.com/flights-to-dallas-fort-worth-dfw (last visited 12/26/2023).

9