BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:<br><br>Glucagon-like Peptide-1 Receptor Agonists<br>(GLP-1 RAs) Products Liability Litigation | MDL Docket No. 3094 |

**RESPONSE OF PLAINTIFF HOLLY JONES**
**TO MOTION FOR TRANSFER AND COORDINATION**
**OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Pursuant to Rule 6.1(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("the Panel") and the Panel's December 5 and 19, 2023 Order (ECF Nos. 5 & 15), Responding Plaintiff Holly Jones submits this response to the motion for centralization and transfer filed on December 1, 2023. As explained below, the Panel should centralize the Related Actions[1] for coordinated pretrial proceedings in light of the many common questions of fact that exist and the substantial advantages that would result from centralization. Moreover, the Panel should transfer the cases to the Western District of Louisiana, given a multitude of factors discussed below, including the presence of the first filed case, which is more advanced than any other case on file.

**BACKGROUND**

Plaintiffs in each of the Related Actions allege a common set of allegations: that Defendants did not warn of or downplayed the risks of gastroparesis or ileus (blocked intestine) with the use of Defendants' Glucagon-Like Peptide-1 Receptor Agonist ("GLP-1RA") drugs. Severe gastroparesis is characterized by severe nausea and vomiting, stomach pain, and

---

[1] As used in this Response, Related Actions collectively refers to both the actions identified in the Movant's Schedule of Actions (ECF No. 1-2) and those subsequently identified in ECF Nos. 13, 25, 27, 30, 34 and 45.

gastrointestinal burning often requiring hospitalization, while severe ileus can lead to a blocked intestine requiring emergency surgery. For some users of a GLP-1RA like Movant, Jaclyn Bjorklund, violent vomiting led to her teeth falling out, the need for medication to treat the extreme vomiting and numerous visits to the emergency room.[2] For others like Responding Plaintiff, Holly Jones, use of a GLP-1RA resulted in severe vomiting, persistent diarrhea, and severe stomach pain that required an emergency room visit.[3] Others had harsher complications from the drug, including Wernicke's encephalopathy (a degenerative brain disorder caused by lack of thiamine),[4] malnutrition, or placement of a feeding tube.[5]

The harms experienced by Jaclyn, Holly and other injured plaintiffs were caused by Defendants' failure to warn about the severe gastrointestinal injuries caused by their GLP-1RA drugs.

Other allegations common to the Related Actions include that: Defendants sold defective and unreasonably dangerous GLP-1RAs causing patients to suffer serious gastrointestinal injuries and that Defendants' misrepresentations and omissions about their GLP-1RAs led physicians to prescribe the drugs to Plaintiffs, which caused them to suffer serious injuries.

The drugs at issue in the Related Actions include Semaglutide (Ozempic, Wegovy, Rybelsus), Tirzepatide (Mounjaro) and Dulaglutide (Trulicity). These drugs and the features at issue in this litigation are similar:

---

[2] *See* Compl. ¶¶ 13-14, *Bjorklund v. Novo Nordisk A/S et al.*, 23-cv-01020 (W.D.La.) (ECF No. 1-7).

[3] *See* Compl. ¶¶ 12-13, *Jones v. Novo Nordisk A/S et al.*, 23-cv-06684 (W.D.N.Y) (ECF No. 1-37).

[4] *See* Compl. ¶¶ 13-14, *Smith v. Eli Lilly & Co.*, 23-cv-01610 (W.D. La.) (ECF No. 1-30).

[5] *See* Compl. ¶¶ 14-15, *Hotchkiss v. Eli Lilly & Co.*, 23-cv-00518 (D. Idaho) (ECF No. 1-12).

- The FDA considers them to belong to a "Class" of drugs because they share a mechanism of action, physiologic effect or chemical structure.[6]

- Each drug is approved to either improve glycemic control in adults with type 2 diabetes mellitus or for chronic weight management.[7]

- None of Defendants' GLP-1RA labeling or marketing warns of the risks of severe gastroparesis or ileus.

The similarities of these drugs also mean there is overlap between the users of each of those products, and consequently, many injured plaintiffs have claims against more than one Defendant. For example, in the *Bjorklund* action from the Western District of Louisiana—the most procedurally developed case (with a prior ruling on two motions to dismiss)—Jaclyn Bjorklund began using Ozempic in 2022 and Mounjaro around July 2023. Jaclyn's use of both drugs and subsequent gastrointestinal injuries illustrates the intertwined nature of the allegations against multiple Defendants. Jaclyn's case is not unique—numerous plaintiffs have alleged injuries that are inextricably linked to both sets of defendants. Several cases filed thus far name multiple Defendants and drugs.[8] Some of the Related Actions involve only Novo Nordisk and others

---

[6] *See* FDA Ozempic Summary Review https://www.accessdata.fda.gov/drugsatfda_docs/nda/2017/209637Orig1s000SumR.pdf (including liraglutide, dulaglutide, and semaglutide in the GLP-1RA class) (last visited Dec. 28, 2023); *see also* FDA Mounjaro Clinical Review https://www.accessdata.fda.gov/drugsatfda_docs/nda/2022/215866Orig1s000MedR.pdf at 52 (results of tirzepatide toxicology studies in animals were typical of the GLP-1 RA pharmacologic class) (last visited Dec. 28, 2023); *see also* https://www.fda.gov/industry/structured-product-labeling-resources/pharmacologic-class (last visited Dec. 28, 2023).

[7] *See*, *e.g.*, https://www.accessdata.fda.gov/drugsatfda_docs/label/2017/209637lbl.pdf (Ozempic Prescribing Insert); https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/215256s007lbl.pdf (Wegovy Prescribing Insert).

[8] *E.g., Bjorklund v. Novo Nordisk A/S et al.*, 23-cv-01020 (W.D.La.) (alleging use of Novo Nordisk's Ozempic and Eli Lilly's Mounjaro); *Ritchie v. Novo Nordisk A/S et al.*, 23-cv-00797 (W.D. Wis.) (alleging use of Novo Nordisk's Ozempic and Eli Lilly's Trulicity); *Andino v. Novo*

involve both Novo Nordisk and Eli Lilly. It is not uncommon for GLP-1RA users to use multiple Defendant drugs that are at issue in the Related Actions.[9] Thus, it would not be feasible for separate MDLs to be formed for each drug manufacturer.

### ARGUMENT

### I.   THIS LITIGATION SHOULD BE CENTRALIZED

The Panel may centralize and transfer civil actions involving one or more common questions of fact if it determines that such a transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Section 1407 centralization "ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Lehman Brothers*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009). "'The basic purpose of assigning (multiple litigation) to a single judge is to provide for uninterrupted judicial supervision and careful, consistent planning and conduct of pretrial and trial proceedings' that will eliminate or reduce conflict and duplication of effort." *In re Multidistrict Private Civil Treble Damage Litig. Involving Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968) (quoting *Manual for Complex and Multidistrict Litigation* at 10 (1968)).

The Related Actions involve a variety of common questions of fact, including: whether Defendants knew that their GLP-1RA drugs could cause serious gastrointestinal injuries, including

---

*Nordisk A/S et al.*, 23-cv-08868 (E.D.N.Y.) (alleging use of Novo Nordisk's Ozempic and Eli Lilly's Mounjaro).

[9] *See*, *e.g.*, Ildiko Lingvay *et al.*, *Outcomes in GLP-1 RA-Experienced Patients Switching to Once-Weekly Semaglutide in a Real-World Setting: The Retrospective, Observational EXPERT Study*, 12 Diabetes Therapy 879, 880 (2021) ("[S]witching between different GLP-1RA products is not uncommon"); see also Christine Rode Andreasen et al., *Understanding the place for GLP-1RA therapy: Translating guidelines for treatment of type 2 diabetes into everyday clinical practice and patient selection*, 23 Diabetes, Obesity & Metabolism 40, 49 (2021) (discussing the need to trial different GLP-1RA drugs if patients experience side effects).

gastroparesis and ileus; whether Defendants failed to warn prescribing physicians and users of the gastrointestinal risks posed by their GLP-1RA drugs; whether Defendants' marketing and promotion of their GLP-1RA drugs downplayed the risks of serious gastrointestinal injuries; whether such misrepresentations to prescribing physicians and users caused Plaintiffs to suffer harm; and whether Defendants' GLP-1RA drugs were defective as designed and whether Defendants knew about such defects.

Centralization of the Related Actions will allow for efficient resolution of the actions. Each Related Action involves similar causes of action such as failure to warn and negligence. All will require discovery regarding Defendants' internal knowledge and testing of the gastrointestinal risks of their GLP-1RA drugs and the messaging contained (or not contained) in their marketing plans and materials to physician prescribers and users. These Actions, "regardless of the manufacturer, will share factual questions regarding general causation (in particular, the biological mechanism of the alleged injury), the background science, and common regulatory issues." *In re Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015). The cases will also require common expert testimony making it likely that numerous Daubert motions will be filed. Separate rulings on Daubert motions by judges in multiple district courts would create the potential for conflicting decisions and would not be an efficient use of judicial resources.

The large of number of pending actions (more than forty to date) strongly favors centralization as does the likelihood that thousands of additional actions will be filed.[10] As of the date of this filing, cases are pending in seventeen federal districts before twenty-seven judges across the country and plaintiffs are represented by numerous different counsel. In such

---

[10] According to *CNN Health*, 1.7% of Americans have been prescribed a GLP-1 receptor agonist in 2023 alone. https://edition.cnn.com/2023/09/27/health/semaglutide-equitable-access/index.html (last visited Dec. 26, 2023).

circumstances, other methods of case management, such as informal cooperation, consolidation or transfer of venue are unlikely to be effective in achieving efficiency.[11]

## II. THE WESTERN DISTRICT OF LOUISIANA IS THE MOST APPROPRIATE FORUM FOR CENTRALIZATION

The selection of an appropriate transferee forum depends on the specific facts and circumstances of the litigation being considered for transfer and consolidation and involves a "balancing test" of several factors "based on the nuances of a particular litigation." Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214 (1977). Factors relevant to this analysis include, but are not limited to, "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." David F. Herr, *Annotated Manual for Complex Litigation, Fourth* § 20.131, at 239 (rev. ed. 2022); *see also In re Regents of Univ. of Cal.*, 964 F.2d 1128, 1136 (Fed. Cir. 1992) (in selecting most appropriate MDL transferee forum, Panel considers, among other things, (1) the location of the "broader-based" and "earliest filed" filed actions; (2) which court "ha[s] developed more familiarity with the issues"; (3) which court is "a centrally located forum" for witnesses and for counsel; and (4) the location of "relevant documents and witnesses") (citing cases).

---

[11] *See*, *e.g.*, *In re Future Motion, Inc. Products Liab. Litig.*, No. MDL 3087, 2023 WL 8539210, at *1 (J.P.M.L. Dec. 8, 2023) ("no feasible alternatives to centralization" and "informal cooperation and coordination among the involved parties and courts would be difficult" where including potential tag-alongs, there were nearly forty related actions pending in seventeen districts).

The case that has progressed furthest in this litigation, *Bjorklund*, described above, is pending before Judge James D. Cain, Jr. in the Western District of Louisiana. In the approximately four months since Jaclyn Bjorklund filed her complaint, Judge Cain has issued rulings on two motions to dismiss filed by Defendants. *See* Dkt. ECF Nos. 66-67 & 69. In addition to promptly ruling on the motions to dismiss, Judge Cain held a Rule 16 conference, ECF No. 56, entered an order for the submission of a joint proposed scheduling order and discovery plan, ECF No. 58, set a trial date of February 13, 2026, ECF No. 59, and denied a motion for a stay. ECF No. 72. The Court also entered an order adopting the scheduling deadlines in the Parties' Joint Proposed Pretrial Order, including a date for the pre-trial conference and pre-trial statements. ECF. No. 78.[12]

The Western District of Louisiana provides a geographically central forum for this nationwide litigation.[13] The allegations in this nationwide litigation do not have a strong connection to any particular district. The Novo Nordisk entities are located in Denmark, New Jersey and Washington and Defendant Eli Lilly is located in Indiana with plaintiffs in the Related Actions, their prescribers and treaters scattered in numerous districts across the country. Also, Lake Charles is reasonably accessible via a short connecting flight from either DFW (Dallas Forth

---

[12] As of the date of this filing, six cases were pending before Judge Cain with two more recently filed cases pending in the Western District of Louisiana, which have not yet been assigned to a judge. Judge Cain also entered numerous orders in the *Breaux* action, involving similar allegations that the plaintiff was not warned about the risk of gastroparesis with Ozempic and developed gastroparesis requiring hospitalization. *See also Breaux v. Novo Nordisk*, *A/S et al*., 23-cv-01365 (W.D.La.) (ECF Nos. 20, 21, 29, 31). While nine cases are pending in the Eastern District of Pennsylvania (as of the date of this filing,) including the *Miller* action, filed two months after *Bjorklund*, that case has not progressed. *See generally Miller v. Novo Nordisk et al*., 23-cv-03924 (E.D. Pa.).

[13] Eli Lilly and Company previously suggested the Western District of Louisiana as an alternative, acceptable forum for centralization in a products liability litigation which it litigated in the Western District of Louisiana through resolution. *See In re Actos Products Liability Litig*., 840 F. Supp. 2d 1356 (W.D. La. 2011); *See In re Actos Products Liability Litig*., 2014 WL 5461859 at *55 (W.D. La. Oct. 27, 2014) (ruling on Eli Lilly's and co-defendant Takeda's motion for a new trial and/or reduction of punitive damages award).

Worth) or IAH (Houston) airports. Both airports are major national hubs for travel with multiple daily and direct flights to major and minor cities.

As of the twelve-month period ending on September 30, 2022, only 7.5 percent of all civil cases in the Western District of Louisiana had been pending for three years or more.[14] The median interval for disposition of civil cases was only 8.8 months, with the disposition interval during or after the pretrial stage only 16.7 months.[15] The median interval from case filing through completion of trial in civil cases in the Western District of Louisiana was only 31.3 months.[16]

Another consideration supporting centralization in the Western District of Louisiana is the capacity of that District to handle this new MDL litigation, devote resources to it and ensure its prompt resolution. Historically, the Western District of Louisiana has transferred many more times the number of MDL constituent cases out of the district than it has received. For 2021-2022, it transferred out 29 cases and received no new cases and had no MDL cases pending.[17] Notably, as of December 15, 2023, not a single MDL is pending in that district.[18] This data suggests that the Western District of Louisiana has the necessary resources to accommodate a major MDL.

An assignment to the Western District of Louisiana would allow the Panel to assign an MDL to a district without a pending MDL and to a judge with complex litigation experience[19] but

---

[14] *See Judicial Business of the United States Courts: 2022 Annual Report of the Director*, Table C-6, https://www.uscourts.gov/statistics-reports/judicial-business-2022-tables.

[15] *Id.*, Table C-5.

[16] *Id.*, Table T-3

[17] *Id.*, Table S-19.

[18] Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District (Dec. 15, 2023), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2023.pdf.

[19] *See* Movant's Memo in Support of Motion for Transfer, ECF No. 1-1 at 16-18 (summarizing Judge Cain's extensive experience with complex litigation).

without a current MDL.[20] Notably, the panel has entrusted the Western District of Louisiana with a multidistrict litigation in the past[21] that saw the first bellwether case tried to verdict within 24 months and resulted in global settlement of the broader litigation within three years.[22]

As of the date of this filing, nine cases are pending in the Eastern District of Pennsylvania, including six cases which were filed since December 15th.  The cases pending in the Eastern District of Pennsylvania include the *Miller* action, filed two months after *Bjorklund*. In contrast to Bjorklund, the *Miller* action has not progressed procedurally. A motion to dismiss was filed but has not been ruled upon nor have foundational orders been submitted by the parties or entered by the Court.[23] In addition, as of December 15, 2023, the Eastern District of Pennsylvania was assigned nine MDLs and had over 1,300 active cases pending in those MDLs.[24]

In short, the Western District of Louisiana is the most suitable district for centralization because it is the forum with the most procedurally advanced action, would allow the Panel to assign this litigation to a district that can accommodate an MDL and to a capable judge without a

---

[20] *See, e.g.*, *In re TransUnion Rental Screening Sols., Inc., Fair Credit Reporting Act Litig.*, 437 F. Supp. 3d 1377, 1378 (J.P.M.L. 2020) (choice of transferee judge "allows us to assign this litigation to an able jurist who has not yet had the opportunity to preside over an MDL"); *In re Gardasil Prods. Liab. Litig.*, No. MDL 3036, 2022 WL 3138681, at *3 (J.P.M.L. Aug. 4, 2022) (noting that transferee judge was "a skilled jurist who has not yet had the opportunity to preside over an MDL"); *In re: Actos Prod. Liab. Litig.,* 840 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("centralization in the Western District of Louisiana permits the Panel to assign the litigation to an experienced judge who sits in a district in which no other multidistrict litigation is pending).

[21] *See In re Actos Prod. Liab. Litig.*, 840 F. Supp. 2d 1356.

[22] *In re Actos Prod. Liab. Litig.*, 274 F. Supp. 3d 485, 489, 503 (W.D.La. 2017).

[23] *See generally Miller v. Novo Nordisk et al.*, 23-cv-03924 (E.D. Pa.). On December 15, 2023, an order was entered staying the action pending resolution of the motion pending before the JPML. *See id*. at ECF No. 16.

**[24] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2023.pdf.**

current MDL. The Western District of Louisana would also provide a geographically central forum for this national litigation.

Dated: December 29, 2023                                  Respectfully submitted,

*/s/ Parvin K. Aminolroaya*
Parvin K. Aminolroaya
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel: 212-584-0700
Fax: 212-584-0799
paminolroaya@seegerweiss.com

*Attorney for Plaintiff Holly Jones*