**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: GLP-1 RECEPTOR AGONIST CASES         MDL DOCKET NO. <u>3094</u>

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF
ACTIONS TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF LOUISIANA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED
OR CONSOLIDATED PRETRIAL PROCEEDINGS**</u>

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................... 3

    A.    Transfer to One District Court for Consolidation and Coordination Is Appropriate Under 28 U.S.C. § 1407.. ...................................................................................................... 3

        1.    These Actions Involve Common Questions of Fact, and Centralization of the Actions will Minimize the Risk of Inconsistent Rulings. ................................................................... 3

        2.    Centralization of the Actions will Promote the Just and Efficient Litigation of the Actions and will Serve the Convenience of the Parties and Witnesses. ...................................... 4

    B.    These Actions Should Be Transferred to the Western District of Louisiana. ................ 8

CONCLUSION ......................................................................................................................... 11

## ARGUMENT IN SUPPORT OF TRANSFER TO THE
## WESTERN DISTRICT OF LOUISIANA

**A. Transfer to One District Court for Consolidation and Coordination Is Appropriate Under 28 U.S.C. § 1407.**

The creation of a multidistrict litigation ("MDL") is appropriate where "civil actions involving one or more common questions of fact are pending in different districts," and transfer will serve "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). As this Panel has emphasized, "[c]entralization [permits] all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

There are—and will continue to be—numerous actions with common questions of fact filed in multiple districts. Given the common nature of these cases, the number of current actions, and the likely number of additional actions to be filed across the country, transfer and coordination are necessary to avoid "multiplied delay, confusion, conflict, inordinate expenses and inefficiency." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L. 1968). The high likelihood of inconsistent judicial rulings affecting the possible tens of thousands of plaintiffs is why Section 1407 was enacted.

    1. <u>These Actions Involve Common Questions of Fact, and Centralization of the Actions will Minimize the Risk of Inconsistent Rulings</u>

The first requirement of 28 U.S.C. § 1407 is the presence of common questions of fact. Transfer and pretrial coordination of actions sharing common questions of fact "conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible*

3

*Composite Hernia Mesh Products Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017). However, these common questions of fact do not require complete identity or even a majority of common questions to justify transfer. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004), See also *In re: Rembrandt Techs., L.P., Patent Litig.*, 493 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007) ("Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer.").

Transfer and centralization are appropriate here, because the Actions all have substantial commonality of questions of fact and law. Here, the Actions allege that Defendants engaged in wrongful conduct in the manufacture, marketing, sale, product information, warning labels, and warranty of their drugs. The Actions further allege that the failure to warn rendered these drugs unreasonably dangerous that said unreasonably dangerous condition caused Plaintiffs' injuries. Moreover, these Actions allege that the Defendants knew of these dangerous side effects and failed to adequately warn healthcare providers of the nature and magnitude of the risks attendant to these drugs.

The common questions of fact concerning the development, testing, manufacturer, sale, marketing, and adequacy of warnings for Defendants' GLP-1RA drugs— including industry knowledge of the GLP-1RA drugs' dangers—clearly warrant transfer and consolidation of these Actions.

2. <u>Centralization of the Actions Will Promote the Just and Efficient Litigation of the Actions and will Serve the Convenience of the Parties and Witnesses.</u>

The J.P.M.L. considers multiple factors when deciding if transfer and consolidation will promote the just and efficient litigation of the Actions, including: (1) avoiding inconsistent rulings among and between cases; (2) prevention of duplicate discovery on common issues; (3) avoidance of undue burden and expense to the parties; and (4) promoting efficiency and judicial economy.

See, *e.g.*, 4 MANUAL FOR COMPLEX LITIGATION, § 20.13, FEDERAL JUDICIAL CENTER (2004) (transfer is proper when it serves "the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions"); see also *In re Bristol Bay, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 506-07 (J.P.M.L. 1976). These factors warrant the transfer and coordination of the Actions here.

Centralizing these Actions before a single judge is the most efficient way to manage this litigation. As described herein, these Actions will turn upon common questions of fact, including whether the Plaintiffs were prescribed GLP-1RA drugs, whether Plaintiffs prescribing healthcare provider relied on Defendants' numerous representations regarding the safety and efficiency of their drugs, whether Defendants knew or should have known of the serious, debilitating risk of gastrointestinal injuries and the sequelae therefrom, whether Defendants adequately warned prescribers about the severity and extent of the risks posed by their drugs, whether Defendants warning to prescribers would have altered their practices or caused them to decline to prescribe the drug or more closely monitor the patients taking the drugs and then discontinue the drug, and whether Plaintiffs suffered gastroparesis and sequelae as a direct result of taking the GLP-1RA drugs. Such questions are common to every Action and will be answered through fact and expert discovery that will likely be extensive, expensive, and time- consuming. Failure to centralize and coordinate these Actions will only serve to duplicate these burdens on all parties.

The likely number of cases involving these products makes centralization critical. More than nine million prescriptions for GLP-1RA drugs have been filled. Given the millions of prescriptions filled, counsel believe that thousands (and possibly tens of thousands) of similar cases are likely to be filed in federal districts across the country. This type of voluminous, complex litigation is precisely why the MDL system exists. See *In re Camp Lejeune, N.C. Water*

*Contamination Litig.*, 763 F. Supp. 2d 1381, 1382 (J.P.M.L. 2011) (considering the potential for "a large number of additional related actions to be filed" as a factor weighing in favor of centralization).

The Panel, likewise, has acknowledged that centralization is still appropriate where the number of cases is fewer—even where only a handful of cases may be pending. For example, the Panel ordered the consolidation of only two actions and one potential tag-along because it was "necessary in order to eliminate duplicative discovery; prevent inconsistent rulings on pretrial motions, including those with respect to whether the actions should proceed as collective actions; and conserve the resources of the parties, their counsel and the judiciary." *In re Starmed Health Pers. FLSA Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004). See also *In re First Nat'l Collection Bureau, Inc.*, 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("Although there are relatively few parties and actions at present, efficiencies can be gained from having these actions proceed in a single district."); *In re Porsche Cars N. Am., Inc.*, 787 F. Supp. 2d 1349, 1360 (J.P.M.L. 2011) (consolidating three pending actions in two districts); *In re Toys "R" Us-Del., Inc., Fair Accurate Credit Transactions Act (FACTA) Litig.*, 581 F. Supp. 2d 1377, 1379 (J.P.M.L. 2008) (consolidating two pending actions in two districts); *In re Milk Antitrust Litig.*, 530 F. Sup.2d 1359, 1360 (J.P.M.L. 2008) (consolidating four pending actions in two districts); *In re Camp Lejeune*, 763 F. Supp. 2d at 1381-82 (consolidating four pending actions in four districts).

These GLP-1RA Actions have only recently been filed, and prompt centralization minimizes the risk of inconsistent rulings. As the Panel recognized in *Camp Lejeune*, delaying centralization "only invites inconsistent rulings," which Section 1407 is designed to avoid. 763 F. Supp. 2d at 1382. Moreover, early centralization of these Actions avoids potential prejudice to a party by transfer and consolidation. Substantive rulings have only just been made in the Western District of Louisiana,

and no party has yet had an opportunity to conduct discovery. The timing of the filing of these Actions and this Motion places these cases in the best position to reap the full benefits of Section 1407.

Early centralization will maximize the benefits of the transfer and coordination under Section 1407. Plaintiffs with Actions in this litigation: will seek substantially the same discovery from defendants; review the same documents produced in discovery; take depositions of the same corporate officers and other witness, as well the same or substantially similar expert witnesses; and will involve the same questions of law surrounding expert qualifications under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and issues raised under motions for summary judgment. Coordination of these Actions will avoid unnecessarily duplicative discovery across multiple Actions and eliminate potentially conflicting or inconsistent rulings. See *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374, 1376 (J.P.M.L. 2011) ("Centralization under Section 1407 will eliminate duplicative discovery, [and] prevent inconsistent pretrial rulings on *Daubert* and other pretrial issues."); *In re Transocean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L. 1976) ("[T]he likelihood of motions for partial dismissal and summary judgment in all three actions grounded at least in part on [a common issue] makes Section 1407 treatment additionally necessary to prevent conflicting pretrial rulings and conserve judicial effort.").

Centralizing the Actions for coordination under Section 1407 is necessary to prevent inconsistent judicial rulings, eliminate duplicative discovery and motion practice, promote convenience and efficiency to the parties and witnesses, and conserve judicial resources. See, *e.g.*, *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices and Prods. Liab. Litig.*, 466 F. Supp. 3d 1380, 1381 ("Centralization will eliminate duplicative discovery; prevent inconsistent

Case MDL No. 3094   Document 49   Filed 12/29/23   Page 7 of 12

and no party has yet had an opportunity to conduct discovery. The timing of the filing of these Actions and this Motion places these cases in the best position to reap the full benefits of Section 1407.

Early centralization will maximize the benefits of the transfer and coordination under Section 1407. Plaintiffs with Actions in this litigation: will seek substantially the same discovery from defendants; review the same documents produced in discovery; take depositions of the same corporate officers and other witness, as well the same or substantially similar expert witnesses; and will involve the same questions of law surrounding expert qualifications under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and issues raised under motions for summary judgment. Coordination of these Actions will avoid unnecessarily duplicative discovery across multiple Actions and eliminate potentially conflicting or inconsistent rulings. See *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374, 1376 (J.P.M.L. 2011) ("Centralization under Section 1407 will eliminate duplicative discovery, [and] prevent inconsistent pretrial rulings on *Daubert* and other pretrial issues."); *In re Transocean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L. 1976) ("[T]he likelihood of motions for partial dismissal and summary judgment in all three actions grounded at least in part on [a common issue] makes Section 1407 treatment additionally necessary to prevent conflicting pretrial rulings and conserve judicial effort.").

Centralizing the Actions for coordination under Section 1407 is necessary to prevent inconsistent judicial rulings, eliminate duplicative discovery and motion practice, promote convenience and efficiency to the parties and witnesses, and conserve judicial resources. See, *e.g.*, *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices and Prods. Liab. Litig.*, 466 F. Supp. 3d 1380, 1381 ("Centralization will eliminate duplicative discovery; prevent inconsistent

pretrial rulings, especially with respect to … *Daubert* motions; and conserve the resources of the parties, their counsel and the judiciary."). The Panel, therefore, should grant Plaintiffs' Motion to Transfer for Coordinated or Consolidated Pretrial Proceedings.

**B. These Actions Should Be Transferred to the Western District of Louisiana**

Plaintiffs urge the Panel to transfer the Actions to the Western District of Louisiana, where a court with experience handling thousands of civil filings in a short period of time can efficiently, justly, and capably manage them. The Western District of Louisiana is the optimal court to manage a complex product liability case like this one.

In determining an appropriate transferee forum, the Panel balances several factors, including the experience, skill, and caseloads of the available judges; the number of cases pending in the jurisdiction; convenience of the parties; location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. See, *e.g.*, *In re Regents of University of California*, 964 F.2d 1128, 1136 (Fed. Cir. 1992); *In re Wheat Farmers Antitrust Class Action Litig.*, 366 F.Supp. 1087, 1088 (J.P.M.L. 1973); *In re Preferential Drugs Prods. Pricing Antitrust Litig.*, 429 F.Supp. 1027, 1029 (J.P.M.L. 1977); *In re Tri-State Crematory Litig.*, 206 F.Supp. 1376, 1378 (J.P.M.L. 2002); Annotated Manual of Complex Litigation (Fourth) (2004), § 20.131, 15 303-04. Factors including experience, number of pending cases, available resources, and convenience to the parties and witnesses all weigh heavily in favor of transferring all related cases to the Western District of Louisiana.

Judge James D. Cain, Jr. in the Western District of Louisiana is well-versed in handling products liability cases involving allegations of failure to warn and has guided numerous products liability cases to successful resolution through jury verdicts, for example, *Hugo Gonzales, et al. v. Sea Fox Boat Company, Inc., 2:19-cv-00130; 2:19-cv-00131; 2:19-cv-00132.* Most of the nearly

7,000 hurricane claims filed in Judge Cain's division in 2021 and 2022 have now been successfully resolved. Judge Cain presided over numerous bench trials and jury trials regarding the hurricane litigation, in addition to his normal docket. In that regard, in 2022, Judge Cain held 11 trials totaling 231 hours and 19 minutes, and in 2023, he held 16 trials totaling 287 hours and 25 minutes. *Clerk of Court for the Western District of Louisiana*. These examples show that the Western District of Louisiana is an efficient, well-run District with impressive case-processing statistics.

The Panel has also held that the pendency of a related action in a particular forum is an important factor in selecting the forum. *See In re: Sugar Industry Antitrust Litig.*, 395 F.Supp. 1271, 1274 (J.P.M.L. 1975) (citations omitted). Of the many Actions currently on file, eleven are on file in the Western District of Louisiana. The remaining cases not pending before the Western District of Louisiana have been filed across numerous District Courts with no other District presiding over as many cases. See David F. Hen, Multidistrict Litigation Manual § 6:8 (2010) ("[T]he Panel will not normally transfer actions to a district in which no action is then pending and the panel clearly considers the number of actions pending in various districts to determine the selection."). In fact, Judge Cain has already issued orders setting two of these GLP-1RA cases for jury trials in 2026.

The actions would also be prudently and efficiently managed if assigned to the Honorable James D. Cain, Jr. Judge Cain is an experienced jurist with a professional background involving substantial complex litigation both as a judge and a private lawyer prior to taking the bench. Judge Cain's comprehensive and unique experience, including presiding over other products liability cases, makes him an excellent choice to oversee this litigation. Judge Cain has shown particular skill in efficiently shepherding thousands of civil cases through discovery and trial to reach final adjudication of issues. His guidance would be instrumental in these cases, which are expected to involve voluminous discovery and complex questions of law. In fact, Judge Cain has already issued rulings

9

and set a trial date on the first GLP-1RA case that was filed in the United States, *Bjorklund v. Novo Nordisk A/S et al.*, 2:23-cv-1020.

The *Bjorklund* case involves both of the two GLP-1RA manufacturers (Novo Nordisk and Eli Lilly). Judge Cain has diligently advanced that case by holding a Rule 16 Conference, ordering the parties to submit a proposed scheduling order, and a proposed preservation order by December 19, 2023. A jury trial has been set reserving four weeks to begin on February 13, 2026. Both Novo Nordisk and Eli Lilly filed Rule 12(b)(6) motions to dismiss Bjorklund's claims. Judge Cain issued a ruling on December 11, 2023 wherein the court granted Novo Nordisk and Eli Lilly's motion to dismiss the warranty claims filed under the Louisiana Products Liability Act and denied their motions to dismiss the failure to warn claims. Another case filed shortly after *Bjorklund* has followed the same procedural track. In *Breaux v. Novo Nordisk, et al.*, 2:23-cv-01365, Judge Cain has already set a jury trial date for September 14, 2026. Judge Cain additionally dismissed Breaux's warranty claims and denied Defendants' motion to dismiss Breaux's failure to warn claims. In both *Bjorklund* and *Breaux*, the parties jointly submitted a Joint Proposed Scheduling Order on December 19, 2023, and are proceeding towards initiating discovery. Most recently in *Bjorklund*, Defendants filed both a Motion to Dismiss for Lack of Jurisdiction and a Motion to Dismiss for Failure to State a Claim on December 18, 2023, and Judge Cain set briefing deadlines for consideration on his next motion date of January 31, 2024. Consequently, the litigation before Judge Cain is far advanced in comparison with the litigation in other districts.

In addition to other factors, consolidation in the Western District of Louisiana offers a convenient and affordable location for both the Plaintiffs and Defendants in these Actions. Lake Charles recently opened a newly renovated airport that has transformed air travel into and out of the Lake Charles metropolitan area. Lake Charles Airport offers free parking and is conveniently located

only eight miles from the federal courthouse. Multiple daily flights are available on United Airlines and American Airlines with convenient connections and short to Houston and Dallas, Texas.

## CONCLUSION

For all the reasons herein, Movants respectfully request the Panel order coordinated and centralized pretrial proceedings for the Actions and transfer all pending and future related actions to the Western District of Louisiana before the Honorable Judge James D. Cain.

Respectfully submitted,

**THE TOWNSLEY LAW FIRM**

BY: */s/ David H. Hanchey*
**DAVID H. HANCHEY, Bar Roll #19927**
**TODD A. TOWNSLEY, Bar Roll #21095**
**HANNAH E. MAYEAUX, Bar Roll #39275**
3102 Enterprise Boulevard
Lake Charles, LA  70601
Telephone:  (337) 478-1400
Facsimile:  (337) 478-1577
Email:  david@townsleylawfirm.com;
hannah@townsleylawfirm.com;
jboone@townsleylawfirm.com;
ahebert@townsleylawfirm.com
*Attorneys for Plaintiffs, Robin Smith and Mark Smith*