**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | **MDL No. 3094** |

**RESPONSE IN OPPOSITION OF DEFENDANT ELI LILLY AND COMPANY**
**TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

<u>**TABLE OF CONTENTS**</u>

Page

**INTRODUCTION** ........................................................................................................... 1

**BACKGROUND** ........................................................................................................... 3

     A.     GLP-1 and GIP Receptor Agonists ........................................................ 3

     B.     The Litigation ......................................................................................... 5

**ARGUMENT** ................................................................................................................ 5

**I.**     **The Panel Should Exclude Lilly From Any MDL.** .......................................... 5

**II.**     **If The MDL Includes Lilly, The Panel Should Transfer The Cases To The Southern District Of Indiana Or The Middle District Of North Carolina** ................. 9

     A.     The Southern District Of Indiana Is An Appropriate Venue. ................. 9

     B.     The Middle District Of North Carolina Also Is An Appropriate Venue. ............. 13

     C.     Alternatively, The Panel Should Consider Other Appropriate Venues. ............... 14

**III.**     **Other Proposed Districts Are Less Preferable Venues.** ............................... 16

     A.     The Western District Of Louisiana. ..................................................... 16

     B.     The Eastern District Of Pennsylvania. ................................................ 18

**CONCLUSION** ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*,
637 F. Supp. 3d 1372 (J.P.M.L. 2022)...............................................................11, 19

*In re AndroGel Prod. Liab. Litig.*,
24 F. Supp. 3d 1378 (J.P.M.L. 2014)........................................................................8

*In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*,
949 F. Supp. 2d 1371 (J.P.M.L 2013)......................................................................10

*In re Aredia & Zometa Prod. Liab. Litig.*,
429 F. Supp. 2d 1371 (J.P.M.L. 2006).......................................................................7

*In re Bausch & Lomb Inc. Contact Lens Sol. Prod. Liab. Litig.*,
444 F. Supp. 2d 1336 (J.P.M.L. 2006).....................................................................13

*In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig*,
659 F. Supp. 2d 1371 (J.P.M.L. 2009).....................................................................12

*In re Cable Tie Pat. Litig.*,
487 F. Supp. 1351 (J.P.M.L. 1980)............................................................................9

*In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*,
53 F. Supp. 3d 1379 (J.P.M.L. 2014).....................................................................9, 12

*In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*,
780 F. Supp. 2d 1379 (J.P.M.L. 2011).....................................................................17

*In re Gardasil Prod. Liab. Litig.*,
619 F. Supp. 3d 1356 (J.P.M.L. 2022).....................................................................14

*In re Incretin Mimetics Prod. Liab. Litig.*,
968 F. Supp. 2d 1345 (J.P.M.L. 2013)...................................................................8, 15

*In re Insulin Pricing Litig.*,
MDL No. 3080, 2023 WL 5065090 (J.P.M.L. Aug. 3, 2023) ................................10

*In re Invokana (Canagliflozin) Prod. Liab. Litig.*,
223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016)..........................................................6, 9

*In re KeyBank Customer Data Sec. Breach Litig.*,
655 F. Supp. 3d 1372 (J.P.M.L. 2023).....................................................................10

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*In re Mirena IUD Prod. Liab. Litig.*,
  938 F. Supp. 2d 1355 (J.P.M.L. 2013)......................................................................18

*In re MOVEit Customer Data.*,
  MDL No. 3083, 2023 WL 6456749 (J.P.M.L. Oct. 4, 2023) ................................10

*In re Nine W. LBO Sec. Litig.*,
  464 F. Supp. 3d 1383 (J.P.M.L 2020)......................................................................11

*In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*,
  MDL No. 3089, 2023 WL 8538831 (J.P.M.L. Dec. 6, 2023)................................10

*In re Pfizer Inc. Mktg. & Sales Pracs. Litig.*,
  657 F. Supp. 2d 1367 (J.P.M.L. 2009)........................................................................8

*In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*,
  923 F. Supp. 2d 1376 (J.P.M.L 2013)........................................................................8

*In re Proton-Pump Inhibitor Prod. Liab. Litig. (No. I)*,
  273 F. Supp. 3d 1360 (J.P.M.L. 2017)........................................................................7

*In re Proton-Pump Inhibitor Prod. Liab. Litig. (No. II)*,
  261 F. Supp. 3d 1351 (J.P.M.L. 2017)...................................................................7, 8

*In re Recalled Abbott Infant Formula Prod. Liab. Litig.*,
  621 F. Supp. 3d 1349 (J.P.M.L. 2022)......................................................................10

*In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig.*,
  571 F. Supp. 2d 1367 (J.P.M.L. 2008)........................................................................7

*In re Trib. Co. Fraudulent Conv. Litig.*,
  831 F. Supp. 2d 1371 (J.P.M.L. 2011)......................................................................18

*In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*,
  867 F. Supp. 2d 1341 (J.P.M.L. 2012)........................................................................7

*In re Walgreens Herbal Supplements Mktg. & Sales Pracs. Litig.*,
  109 F. Supp. 3d 1373 (J.P.M.L. 2015)......................................................................10

*In re Watson Fentanyl Patch Prod. Liab. Litig.*,
  883 F. Supp. 2d 1350 (J.P.M.L. 2012)............................................................7, 8, 17

*In re Yellow Brass Plumbing Component Prod. Liab. Litig.*,
  844 F. Supp. 2d 1377 (J.P.M.L. 2012)........................................................................5

**Statutes**

28 U.S.C. § 1407............................................................................................................2, 16, 17

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

**Other Authorities**

Wright & Miller, 15 FED. PRAC. & PROC. JUR. § 3864 (4th ed.) ....................................................2

## INTRODUCTION

As several plaintiffs represented by a prominent law firm have argued, Eli Lilly and Company should be excluded from an MDL centered on Ozempic—a product that Lilly does not make. ECF No. 50 at 1. Ozempic is manufactured by Novo Nordisk, Inc. Although approved as a treatment for adults with type 2 diabetes, plaintiffs allege it was Ozempic's popularity as a "weight loss drug" that propelled Ozempic to what plaintiffs describe as an "accidental blockbuster."[1] Plaintiffs began filing so-called "Ozempic Lawsuits,"[2] alleging that Novo failed to warn that Ozempic and Wegovy (another Novo product) could cause certain gastrointestinal conditions. Allegations about inadequate warnings and "marketing of the weight loss benefits of Ozempic" are the cornerstone of those complaints.[3] There are now 37 cases against Novo.

A small number of cases were filed against Lilly too. But until earlier this month (December 2023), Lilly never sold any medicine approved by the FDA to treat chronic weight management, and lawsuits against Lilly are but a fraction of the cases Movants propose to consolidate here. ECF No. 1.01 ("Mot."). As of the date of this filing, the overwhelming majority of cases include claims against Novo (88%), and 76% of cases are filed only against Novo. Only a small minority of cases (10) allege claims against any Lilly products at all. The only two Lilly products included in any pending case are Mounjaro and Trulicity, which are approved to treat type 2 diabetes, not weight loss. None of the plaintiffs suing Lilly alleges that he or she used a Lilly product for weight loss. The claims involving Lilly's type 2 diabetes medicines should not

---

[1] Compl. § I & ¶ 145, *Gray v. Novo Nordisk et al.*, No. 2:23-cv-05031 (E.D. Pa. Dec. 19, 2023).

[2] Morgan & Morgan, "Ozempic Lawsuit," *available at* https://www.forthepeople.com/practice-areas/mass-tort-lawyers/weight-loss-lawsuit/ozempic/ (last accessed Dec. 28, 2023).

[3] *See, e.g., id.* at ¶¶ 64, 145, 252, 262, 296, 315, 338; *see also* Compl. at ¶¶ 33-42, *Kelly v. Novo Nordisk et al.*, No. 3:23-cv-00446 (N.D. Miss. Nov. 28, 2023).

be coordinated into a sprawling MDL that centers on allegations about Novo's products.  The Panel should deny the motion to transfer the claims against Lilly.

If the Panel nevertheless determines that Lilly should be included in an MDL, the actions should be centralized in the Southern District of Indiana or the Middle District of North Carolina. These districts (i) are in centralized and easily accessible locations; (ii) are home to experienced jurists who are well equipped to navigate the complex regulatory and other issues that will be central to effective management of this MDL; (iii) have significant ties to the litigation (Lilly is headquartered in Indianapolis; one Novo defendant is headquartered in North Carolina; and both Lilly and Novo have manufacturing facilities in or proximate to the Middle District of North Carolina); and (iv) are underutilized for MDLs.  For example, the Honorable Richard L. Young in the Southern District of Indiana or the Honorable Thomas D. Schroeder in the Middle District of North Carolina are skilled jurists with MDL experience in well-resourced and uncongested districts.  Transferring the cases to either district would strike the optimal balance of prior MDL experience and providing these or other judges in the districts an opportunity to helm an MDL in an otherwise relatively underutilized venue.

In short, Lilly respectfully requests that claims against Lilly be excluded from any MDL. But to the extent the Panel elects to include claims against Lilly in the MDL, centralizing this nationwide litigation in the Southern District of Indiana or the Middle District of North Carolina will be "in consonance with the underlying statutory goal of Section 1407(a): 'the convenience of parties and witnesses [to] promote the just and efficient conduct of such actions.'"  Wright & Miller, 15 FED. PRAC. & PROC. JUR. § 3864 (4th ed.) (quoting 28 U.S.C. § 1407).

## BACKGROUND

### A.      GLP-1 and GIP Receptor Agonists

Glucagon-like-peptide-1 receptor agonists ("GLP-1 RAs") are prescription medicines that work by binding to and activating receptors, called GLP-1 receptors, on the surface of certain human cells.  GLP-1 RAs mimic the GLP-1 hormone that is produced in the human body, is released after eating, and plays a role in blood sugar control.  In 2017, Novo launched Ozempic (a trade name for semaglutide) as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes.  Ozempic is a GLP-1 RA.  The FDA also approved Rybelsus— semaglutide that can be taken orally—in 2019, and Wegovy—semaglutide for use as an adjunct to diet and exercise to help adults or children over the age of 12 living with obesity lose weight—in 2021.  Rybelsus and Wegovy are also GLP-1 RAs.

In 2014, the FDA approved Lilly's GLP-1 RA medicine Trulicity (a trade name for dulaglutide).  Trulicity has never had a weight management indication.  Instead, it is approved for treatment of certain patients with type 2 diabetes and to reduce the risk of major cardiac events in certain adults with type 2 diabetes.[4]  No plaintiff alleges he or she used Trulicity for weight loss.

In 2022, the FDA approved Lilly's Mounjaro (a trade name for tirzepatide).  While Ozempic, Wegovy, Rybelsus, and Trulicity target only GLP-1 receptors, Mounjaro is the first FDA-approved medication that works by activating *both* GLP-1 receptors *and* separate receptors called GIP (glucose-dependent insulinotropic polypeptide) receptors.  GIP is a human hormone

---

[4] Trulicity is indicated "[a]s an adjunct to diet and exercise to improve glycemic control in adults and pediatric patients 10 years of age and older with type 2 diabetes mellitus" and "[t]o reduce the risk of major adverse cardiovascular events in adults with type 2 diabetes mellitus who have established cardiovascular disease or multiple cardiovascular risk factors."  Trulicity Prescribing Information, *available at* https://pi.lilly.com/us/trulicity-uspi.pdf (last accessed Dec. 28, 2023).

that affects the body's secretion of insulin, which is involved in blood sugar control.[5]   Mounjaro is approved for treatment of certain patients with type 2 diabetes, and no plaintiff alleges he or she used Mounjaro for weight loss or any off-label purpose.  Just recently, in November 2023, the FDA approved Zepbound, which is the second FDA-approved branded formulation of tirzepatide, for chronic weight management in adults with obesity (BMI $\geq$ 30 kg/m$^2$) or overweight (BMI $\geq$ 27 kg/m$^2$) with certain specific weight-related conditions.  Lilly launched Zepbound in December 2023.  There are no pending cases regarding Zepbound.  In other words, there are no filed cases in which a plaintiff alleges use of any Lilly medicine for weight loss or weight management.

The various Novo and Lilly products' labels are different in key respects relevant to this litigation.  A number of plaintiffs allege they are suffering from gastroparesis or ileus (which they describe as intestinal obstruction).  The Mounjaro and Trulicity (and Zepbound) labels have always warned about "severe gastrointestinal disease" and state these medicines may be "associated with gastrointestinal adverse reactions, sometimes *severe*."[6]  The labels further warn that these products have not been tested in patients with "severe gastrointestinal disease, including severe gastroparesis, and [are] therefore not recommended in these patients."[7]  The Ozempic, Wegovy, and Rybelsus labels do not include this specific language.

---

[5]  *See FDA Approves Novel, Dual-Targeted Treatment for Type 2 Diabetes*, *available at* https://www.fda.gov/news-events/press-announcements/fda-approves-novel-dual-targeted-treatment-type-2-diabetes (last accessed Dec. 28, 2023).

[6]  Mounjaro, Trulicity, & Zepbound, Prescribing Information, *available at* https://pi.lilly.com/us/mounjaro-uspi.pdf;https://pi.lilly.com/us/trulicity-uspi.pdf; https://pi.lilly.com/us/zepbound-uspi.pdf (emphases added, last accessed Dec. 28, 2023).

[7] *Id.*

### B.    The Litigation

Movants seek to create an MDL to consolidate ballooning lawsuits alleging GLP-1 RA manufacturers "downplay[ed] the severity of the gastrointestinal events" and "failed to adequately warn" "about the extent and severity of the risks." Mot. at 4. Movants propose an industry-wide MDL, even though the lawsuits are comprised primarily of claims against and allegations about Novo's Ozempic and other Novo products.

There are now 42 actions filed by more than a dozen law firms pending in federal courts. To date, the vast majority (37) of cases are filed against Novo, while only 10 cases have been filed against Lilly (only 5 of which are also against Novo). To the extent Lilly is named in lawsuits, many of the claims against it are pled as afterthoughts to core allegations about Ozempic, Wegovy, and other Novo medicines. Simply put, the allegations about Novo's Ozempic and Wegovy are driving this litigation—not peripheral claims about Lilly's diabetes medicines.

Plaintiffs reside throughout the United States, including in Alabama, Arkansas, California, Florida, Idaho, Illinois, Iowa, Louisiana, Maryland, Mississippi, Missouri, Nebraska, New Jersey, New York, Oklahoma, Pennsylvania, South Dakota, Utah, West Virginia, and Wisconsin. The Novo-affiliated defendants are also geographically diverse and are headquartered or located in New Jersey, Delaware, North Carolina, Massachusetts, Washington, and Denmark. Lilly is headquartered in Indianapolis, Indiana, and has facilities elsewhere, including in North Carolina.

## ARGUMENT

## I.    The Panel Should Exclude Lilly From Any MDL.

The Panel should create an MDL that includes claims against Novo only—and exclude the claims against Lilly. Consolidating actions against two separate companies will only complicate and prolong pretrial proceedings. The Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products." *In re*

*Yellow Brass Plumbing Component Prod. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012).  For example, in *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, the Panel declined to consolidate multiple manufacturers in one MDL, even in "combination cases" where patients used multiple products from the same drug class.  223 F. Supp. 3d 1345 (J.P.M.L. 2016).  The Panel noted that "[c]entralizing competing defendants in the same MDL may unnecessarily complicate case management, due to the need to protect trade secret and confidential information."  *Id.* at 1348.  The Panel further concluded that, "especially given the relatively small number of Farxiga-only cases (fifteen), Jardiance-only cases (three), and 'combination cases' (three),[] class-wide centralization is not warranted at the present time."  *Id.*

 The same reasoning applies here.  Movants' proposed MDL is centered on Ozempic and Wegovy—products Lilly does not make.  Lilly is named in only 10 of 42 lawsuits, and primarily as an afterthought and on the periphery of the core allegations about Novo's products.  Just like *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, the vast majority of cases are solely filed against Novo.  And plaintiffs' allegations about Lilly and Novo marketing and product labels differ significantly.  Where, as here, plaintiffs' lawsuits focus on different drugs—with different development, manufacturing, testing, regulatory history, marketing, and labeling—"a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials."  *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d at 1348.

 And the problem of prolonged proceedings will be amplified here.  The two proposed defendants, Lilly and Novo, are market leaders and fierce business competitors.  As the Panel has recognized, "the introduction of competing defendants into the litigation, and the need to protect trade secret and confidential information from full disclosure to the parties, would complicate case

management." *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 867 F. Supp. 2d 1341, 1342 (J.P.M.L. 2012). The Panel has declined to centralize industry-wide MDLs for precisely these reasons on multiple occasions. *See In re Watson Fentanyl Patch Prod. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (denying motion to transfer cases against other manufacturers into a Watson-specific fentanyl patch MDL because "[e]ach group of cases against each manufacturer will involve unique products—and defendant-specific issues (such as the different product designs, manufacturing processes, regulatory histories, and company documents and witnesses) that will overwhelm the few common issues"); *In re Aredia & Zometa Prod. Liab. Litig.*, 429 F. Supp. 2d 1371 (J.P.M.L. 2006) (declining to consolidate subset of actions that involved non-Aredia/non-Zometa products); *In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig.*, 571 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (denying transfer of clams involving different drugs made by different companies, including some sued in "only in a minority" of actions).

The cases Movants cite in support of industry-wide consolidation are distinguishable. *See* Mot. at 9-10. For example, Movants rely on *In re Proton Pump Inhibitor Prod. Liab. Litig. (No. II)*, but there the Panel centralized the cases only *after denying* the first consolidation motion. In the first transfer motion, *In re Proton-Pump Inhibitor Prod. Liab. Litig. (No. I),* the Panel declined to consolidate the actions because, among other things, "the named defendants vary from action to action," and although "AstraZeneca is sued in most of the actions (14 constituent actions and 23 tag-alongs), P & G is sued in only eight, Takeda in four, and Pfizer in two." 273 F. Supp. 3d 1360, 1361 (J.P.M.L. 2017). The Panel concluded, "[c]entralization thus appears unlikely to serve the convenience of most, if not all, defendants and their witnesses." *Id.* at 1361-62; *see also id.* (noting that plaintiffs' "guarantee" that the number of cases would increase "by hundreds, if not thousands" was not sufficient because the Panel has been "disinclined to take into account the

mere possibility of future filings in [its] centralization calculus") (citation and quotation omitted). By the time of *In re Proton Pump Inhibitor (No. II)*, the number of cases had grown considerably, and all plaintiffs and most defendants supported consolidation. And even as to the one defendant who opposed consolidation, "a significant number of actions [were] 'mixed use' cases in which the plaintiffs allege[d] use of more than one PPI." *In re Proton-Pump Inhibitor Prod. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1355 (J.P.M.L. 2017). Here, in contrast, there are only five cases involving alleged mixed use of Novo and Lilly products. In sum, the state of the litigation here is considerably closer to the procedural posture of the *first* proposed *In re Proton Pump Inhibitor* MDL, and, as the Panel did in that case, it should deny transfer of the claims against Lilly here.[8]

In short, "[c]entralization of all actions against all manufacturers will add few efficiencies to the resolution of this litigation." *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d at 1351. Lilly agrees with the plaintiffs who argue against an industry-wide MDL. ECF No. 50. At this stage,[9] Movants have not met their burden to show that consolidating 10 claims against Lilly with 37 claims against Novo will "promote the just and efficient conduct of [this] litigation"

---

[8] Nor is Movants' reliance on *In re AndroGel Prod. Liab. Litig.* instructive. Here, plaintiffs seek consolidation of cases related to a host of drugs—Ozempic, Wegovy, Rybelsus, Trulicity, and Mounjaro—whereas the AndroGel defendants all sold the exact same medicine, testosterone, and the products differed only in terms of how the medicine was delivered to patients. *See* 24 F. Supp. 3d 1378 (J.P.M.L. 2014). Movants' citation to *In re Incretin Mimetics Prod. Liab. Litig.* is likewise misplaced. Not only did "the involved defendants all support centralization," but the Panel's decision to centralize was influenced by the presence of many combination cases. 968 F. Supp. 2d 1345, 1346-47 (J.P.M.L. 2013). Neither of those factors exists here—where Lilly opposes inclusion in any centralization and there are only 5 alleged combination use cases.

[9] Denying centralization now will not foreclose later motions to centralize claims against Lilly if "a significant change in circumstance" occurs. *See In re Proton Pump Inhibitors (No. II)*, 261 F. Supp. 3d 1351 (discussed above); *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 923 F. Supp. 2d 1376, 1378 (J.P.M.L 2013) (granting defendants' second motion to create an MDL); *In re Pfizer Inc. Mktg. & Sales Pracs. Litig.*, 657 F. Supp. 2d 1367, 1368 (J.P.M.L. 2009) (refusing to centralize two actions involving multiple prescription drugs where the Panel was not convinced "at the present time" that centralization was appropriate).

and further "the convenience of the parties and witnesses." *In re Cable Tie Pat. Litig.*, 487 F. Supp. 1351, 1353 (J.P.M.L. 1980). The Panel should not include Lilly in an MDL, deny the motion to transfer any claims against Lilly, and separate and remand Lilly claims in the few cases naming both Novo and Lilly, as it did in *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d at 1349.

**II.    If The MDL Includes Lilly, The Panel Should Transfer The Cases To The Southern District Of Indiana Or The Middle District Of North Carolina.**

If the Panel opts to include Lilly in an MDL, the Southern District of Indiana or the Middle District of North Carolina would be the most appropriate forum. *First*, both districts are in geographically central locations that are convenient and accessible by all parties and have substantial connections to one or more of the named defendants. *Second*, both districts have the right balance of capacity, resources, and experience to ably manage this litigation.

**A.    The Southern District Of Indiana Is An Appropriate Venue.**

If the Panel includes claims against Lilly in the MDL, the Southern District of Indiana plainly is an appropriate venue. *First*, the Southern District of Indiana is convenient and accessible to the parties and witnesses. Lilly's corporate headquarters is in Indianapolis and is home to nearly 12,000 Lilly employees, and Lilly's business is concentrated in or around Indianapolis. Consolidation in this district and near Lilly's headquarters will be convenient to the parties, as relevant documents, witnesses, and other evidence may be found there.[10] The Panel has repeatedly recognized that consolidation of nationwide cases in the district where one or more defendants are headquartered is appropriate for these and other reasons. *See In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, 53 F. Supp. 3d 1379, 1380 (J.P.M.L. 2014) (transferring

---

[10] Movants' counsel Morgan & Morgan also has an office in Indianapolis, located at 117 E Washington Street, which is 0.3 miles from the Southern District of Indiana courthouse.

cases to the Southern District of Indiana because "[the defendant] is headquartered in Indiana" which is "where relevant documents and witnesses are likely to be found"); *see also In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 621 F. Supp. 3d 1349, 1350 (J.P.M.L. 2022) ("[T]he Northern District of Illinois, where Abbott is headquartered, is the appropriate transferee district[.]"); *In re MOVEit Customer Data.*, MDL No. 3083, 2023 WL 6456749, at *3 (J.P.M.L. Oct. 4, 2023) (consolidating cases near one defendant's headquarters).

The Southern District of Indiana is an appropriate forum although Novo is not located there. *See, e.g.*, *In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, MDL No. 3089, 2023 WL 8538831, at *2 (J.P.M.L. Dec. 6, 2023) (transferring cases to the Southern District of New York where some "defendants' headquarters [were] in the New Jersey and New York area"); *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1374 (J.P.M.L. 2023) (transferring cases to district where one of two defendants was headquartered); *In re Insulin Pricing Litig.*, MDL No. 3080, 2023 WL 5065090, at *3 (J.P.M.L. Aug. 3, 2023) (transferring cases to district to where "two of the three manufacturer defendants" were headquartered); *In re Walgreens Herbal Supplements Mktg. & Sales Pracs. Litig.*, 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015) (transferring to district where one of four defendants was headquartered).

Moreover, because this litigation has no apparent geographic nucleus for any party except Lilly, a centralized location is a key consideration. Indianapolis is a centrally located city that is easily accessible, as the Panel has repeatedly recognized. *See, e.g.*, *In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1371, 1372 (J.P.M.L 2013) ("This district provides a geographically central forum for this nationwide litigation, and is equally convenient to plaintiffs and defendant."). The Indianapolis International Airport is just 20 minutes from the federal courthouse in Indianapolis and has over 160 daily departures to nearly 50 nonstop

destinations, including Newark (Novo's U.S. headquarters) and many cities where plaintiffs have

filed suit or reside.  The airport is served by all the major U.S. airline carriers, including American,

United, Delta, and Southwest, which will facilitate travel by out-of-state parties, witnesses, and

counsel.[11]  The airport was also named a "Best Airport in North America" for the 11th year in a

row by Airports Council International, in addition to topping *Travel + Leisure*'s, J.D. Power's,

and *Conde Nast Traveler*'s 2023 rankings.[12]  And the lack of a related action in this district is "not

a bar to centralization there" either.  *In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1386

(J.P.M.L 2020); *see also In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*, 637 F. Supp. 3d

1372, 1376 & n.6 (J.P.M.L. 2022) (holding the "absence of a related action in the transferee district

is no obstacle to assignment of the actions there").

      *Second*, the Southern District of Indiana has the judicial experience and resources needed

to steer an MDL of this magnitude and complexity.  In addition to ensuring a central and

convenient venue, it is also important to ensure the district chosen has adequate experience with

the type of complex issues likely to arise in this litigation.  As the Panel observed in selecting the

transferee judge in a similar proposed MDL, "[t]his complex industrywide litigation is in need of

an experienced transferee judge . . . who is willing and able to efficiently manage this litigation."

*In re Acetaminophen*, 637 F. Supp. 3d at 1376.  Senior Judge Young is currently overseeing an

---

[11] *See* U.S. Dept. of Trans., Bureau of Statistics, *available at*
https://www.transtats.bts.gov/airports.asp?20=E&Nv42146=VaQ&Nv42146_anzr=V0qvn0n21y
v5,%20Va:%20V0qvn0n21yv5%20V06r40n6v10ny&pn44vr4=SNPgf (last accessed Dec. 28,
2023).

[12] Cheryl V. Jackson, *What's the Best Airport in the Country? Indy Tops National Poll*, INDYSTAR
(Oct. 18, 2023), *available at*
https://www.indystar.com/story/news/local/transportation/2023/10/16/indianapolis-international-airport-tops-usa-today-10best-list-named-indianapolis-international-airpo/71207558007/ (last
accessed Dec. 28, 2023).

MDL, *In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.* (MDL No. 2570).  The *Cook Medical* MDL, at its height, was comprised of thousands of claimants alleging personal injuries related to medical devices or drugs (specifically, IVC filters).  In addition to managing voluminous claims, Senior Judge Young resolved substantial *Daubert* and dispositive motions and shepherded several bellwether cases through trial.[13]  Senior Judge Young's MDL experience complements other experienced jurists in the district, including a transferee judge who the Panel recognized had made "many well considered and useful rulings on procedural, substantive and evidentiary issues" in a complex product liability MDL.  *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig*, 659 F. Supp. 2d 1371, 1372 (J.P.M.L. 2009).

Thus, whether the Panel assigns the case to Senior Judge Young or to another judge in this district, a judge in this venue will have the benefit of and ready access to the experience and insight of seasoned MDL judges in the same district.  In addition, the Southern District of Indianapolis is also an appropriate transferee court because of its capacity and efficiency.  The *Cook Medical* MDL is the only pending MDL here,[14] and the median time to civil disposition is just 9.6 months.[15]

---

[13] Senior Judge Young's assignment to an existing MDL should not foreclose an assignment here if he is interested and available.  It is common for the Panel to assign more than one MDL to a single judge.  According to the current MDL Statistics Report, over twenty federal judges are presiding over more than one MDL.  *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District (Dec. 15, 2023),
*available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2023.pdf (last accessed Dec. 28, 2023).

[14] *Id.*

[15] *See* United States District Courts – National Judicial Caseload Profile, *available at* https://www.uscourts.gov/file/76945/download (last accessed Dec. 28, 2023).

**B.    The Middle District Of North Carolina Also Is An Appropriate Venue.**

The Middle District of North Carolina provides an alternative transferee venue that is convenient and accessible for several reasons.

*First*, one Novo defendant, Novo Nordisk Pharmaceutical Industries LP, has "its principal place of business" in Clayton, North Carolina."[16]  And both Lilly and Novo have manufacturing facilities in North Carolina.  Lilly has two manufacturing sites in the district—its Research Triangle Park Campus in Durham County as well as an injectables manufacturing facility it is currently building in Concord, North Carolina.  Novo likewise has a manufacturing facility in Durham.  The Panel has considered the presence of manufacturing facilities or other business operations in making the transferee selection.  *See, e.g.*, *In re Bausch & Lomb Inc. Contact Lens Sol. Prod. Liab. Litig.*, 444 F. Supp. 2d 1336, 1338 (J.P.M.L. 2006) (transferring cases to District of South Carolina because "[r]elevant discovery may be found in this district, inasmuch as B & L has a manufacturing facility located there").

*Second*, the Middle District of North Carolina is a convenient forum.  Not only do Lilly and Novo have a substantial presence in the district, but the district is also an easily accessible location for all counsel and parties.  The nearby Charlotte Douglas International Airport and Raleigh-Durham International Airports provide national and international access to the district. And the Piedmont Triad International Airport is a 15-minute drive from the Greensboro courthouse, a 25-minute drive from the Winston-Salem courthouse, and has daily direct flights to numerous cities where plaintiffs have filed litigation.[17]

---

[16] *See, e.g.,* Compl. ¶¶ 11, 16, *Shirley v. Novo Nordisk A/S et al.*, No. 2:23-cv-04980 (E.D. Pa. Dec. 15, 2023).

[17] *See* U.S. Dept. of Trans., Bureau of Statistics, *available at* https://www.transtats.bts.gov/airports.asp?20=E&Nv42146=Tfb&Nv42146_anzr=T4rr05o141/U

*Third*, the district has able and experienced judges who would be well qualified to manage an MDL.  For example, Judge Schroeder is an experienced jurist, having taken the bench in 2008, and is successfully managing the *In re Crop Protection Products Loyalty Program Agreements Antitrust Litigation* MDL.  Alternatively, Judge William Osteen likewise is an experienced jurist in the same district, having served as a judge since 2007 and as Chief Judge from 2012 through 2017.  Assigning this MDL to Judge Osteen, an experienced jurist who has not yet had the opportunity to preside over an MDL, would also be consistent with the Panel's goal of providing MDL experience to a broader net of judges.  *See In re Gardasil Prod. Liab. Litig.*, 619 F. Supp. 3d 1356, 1358 (J.P.M.L. 2022) (assigning MDL to "a skilled jurist who has not yet had the opportunity to preside over an MDL").

*Fourth*, the district has capacity for an MDL of this size.  It has four active judges with no vacancies in at least the past six years, and the median time to disposition of civil cases is less than ten months.[18]  Moreover, there is currently only one MDL pending in the district (*In re Crop Protection Prod. Loyalty Program Agreements Antitrust Litig.* (MDL No. 3062)) and prior to that MDL, the district had been without any multidistrict litigation since 2009.[19]

### C.    Alternatively, The Panel Should Consider Other Appropriate Venues.

Lilly believes that either the Southern District of Indiana or the Middle District of North Carolina are the most appropriate districts to handle this MDL.  But if the Panel were inclined to

---

vtu%20c1v06,%20aP:%20cvrqz106%20g4vnq%20V06r40n6v10ny&pn44vr4=SNPgf                    (last accessed Dec. 28, 2023).

[18] *See* United States District Courts – National Judicial Caseload Profile, *available at* https://www.uscourts.gov/file/76945/download (last accessed December 28, 2023).

[19] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District (Dec. 15, 2023), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2023.pdf (last accessed Dec. 28, 2023).

explore other options, the District of Utah—where one case against Novo is currently pending—is also an appropriate forum.  The Panel might also consider the Honorable Anthony J. Battaglia (S.D. Cal.) given his unique experience in MDL litigation involving GLP-1 RAs.

*First*, there is one case currently pending in the District of Utah, assigned to the Honorable David Bruce Barlow.  *See Olson v. Novo Nordisk A/S et al.*, No. 2:23-cv-00844-DBB (D. Utah Nov. 16, 2023).  The district is readily accessible.  Salt Lake City International Airport is a Delta hub, served by all major airlines, and located twelve minutes from the federal courthouse.  The district is underutilized—there are no MDLs pending now, and the last MDL there (*In re BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Litigation* MDL) terminated in 2015.[20] Moreover, despite this lack of recent MDL experience, the district has several jurists with MDL experience who could offer guidance if Judge Barlow or any other jurist in the district were selected.

*Second*, Lilly agrees with Novo that the Honorable Anthony J. Battaglia of the Southern District of California would be well positioned to serve as a transferee judge here.  Judge Battaglia presided over and resolved an MDL involving several GLP-1 RA medicines used to treat patients with type 2 diabetes (like several of the medications involved here).  *See In re Incretin Mimetics Prods. Liab. Litig.*, MDL No. 2452 (S.D. Cal.).

---

[20] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District (Dec. 15, 2023)*, available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2023.pdf (last accessed Dec. 28, 2023).

### III.      Other Proposed Districts Are Less Preferable Venues.

#### A.      The Western District Of Louisiana.

Lilly respects and appreciates Judge Cain's attention to the early cases filed in his District. But Movants' proposal to transfer to Lake Charles a major MDL involving companies, claimants, and other parties in Indianapolis (Lilly) and otherwise dispersed across the nation (and in the case of Novo, also in Denmark) is less likely to further, and may frustrate, the convenience and efficiency goals of Section 1407 transfers.  Movants' decision to file the first cases in this venue does not tilt the balance in favor of transferring all the now pending cases (or those that may be filed in subsequent months or years) to Lake Charles, Louisiana, as opposed to other venues.

*First*, Lilly disagrees that the district is "convenient and accessible."  Mot. at 19.  Movants allege that the Lake Charles federal courthouse can be reached through: (1) a three-hour drive from New Orleans, (2) a two-and-a-half-hour drive from Houston, or (3) flying into Houston or Dallas, waiting for one of the handful of connecting flights, and then flying into Lake Charles Regional Airport.  *See id.*  But as a practical matter, Lake Charles is an inconvenient location to travel to for anyone who does not reside in or near the Western District of Louisiana—*i.e.*, all defendants and their counsel as well as most witnesses and plaintiffs and their counsel.  Because almost no attorney, witness, or party is in driving distance of Lake Charles, conferences and hearings before the Court would require dozens of people to take at least two flights or rent a car and drive two to three hours.  Each will likely require a travel day before the proceeding and another travel day after the proceeding, resulting in a three-day trip with significant wasted time and resources for the parties, counsel, and any other court attendees.

*Second*, contrary to Movants' assertions, the Western District of Louisiana has little connection to this litigation.  No defendant is headquartered there.  None of the products at issue is manufactured there.  And most of the actions already filed (33 out of 42 cases) are brought by

plaintiffs who do not reside in the Western District of Louisiana. Movants' attempts to create a substantial nexus between the litigation as a whole and Lake Charles fail. Movants point to pending cases filed in the district.[21] Mot. at 3, 18, 19. But Lake Charles's potential convenience for 11 individual plaintiffs who filed in that district is insufficient. "[I]n deciding issues of transfer under Section 1407," the Panel looks "to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation." *In re Watson Fentanyl Patch Prod. Liab. Litig.*, 883 F. Supp. 2d at 1351–52 (citation omitted). Further, in an MDL where claimants will likely "reside in every corner of the country," "the location of the currently filed cases is not a particularly significant factor." *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011). Movants claim they are considering filing claims for thousands of other plaintiffs, Mot. at 3, making the current fraction of cases pending in any one district especially irrelevant. In short, in looking at the overall convenience for the litigation as a whole, the Panel should not transfer the cases to this district.

*Third*, Movants also contend the *Bjorklund* case pending in the Western District of Louisiana is "far advanced in comparison with the litigation in other districts." Mot. at 19. But as Judge Cain's recent opinions and orders reflect, that case is still in very preliminary stages and "it is unlikely that any discovery will actually commence before the JPML renders its decision." *See Bjorklund*, ECF 72 at 1; *see also Bjorklund*, ECF 69 at 8 (referring to the "early stage of litigation"); *id.* at 14 (declining to resolve certain issues as "premature").

---

[21] Movants also surmise that Louisiana will be a "hotbed" of litigation because an online magazine reported the results of a survey (conducted nearly a year ago) purporting to show many Louisiana residents' "internet searches" for Ozempic and Mounjaro. Mot. at 19. The Panel should reject the unsupported conjecture that this survey can or does predict litigation trends and should disregard Movants' arguments about it in making the transfer decision.

*Fourth*, it is unclear whether the district as whole has the judicial resources to handle this litigation.  The judicial vacancies in the Western District of Louisiana are currently designated as a "judicial emergency."[22]

## B.     The Eastern District Of Pennsylvania.

The Panel should also reject requests to transfer the cases to the Eastern District of Pennsylvania.  ECF No. 50 at 2.  *First*, while some law firms have filed cases there since the transfer motion was filed less than a month ago, rushing to file a cluster of cases in a preferred venue does not support centralization there—especially where more than half (5 out of 9 ) of those cases are filed on behalf of claimants who do not reside in or anywhere near that district.[23]

*Second*, if the Panel is considering this district, Lilly respectfully suggests that the better option is the Southern District of New York, just 90 minutes to the North.  The Southern District of New York is at least as geographically convenient as the Eastern District of Pennsylvania.  The Panel has recognized the Southern District of New York is "easily accessible for . . . nationwide litigation."  *In re Mirena IUD Prod. Liab. Litig.*, 938 F. Supp. 2d 1355, 1358 (J.P.M.L. 2013); *see also In re Trib. Co. Fraudulent Conv. Litig.*, 831 F. Supp. 2d 1371, 1372 (J.P.M.L. 2011) (finding Southern District of New York was a convenient and accessible forum for most parties "[g]iven the wide dispersal of these actions across the country").  And the three major international airports nearby offer frequent flights across the country and will provide more direct access to international

---

[22] *See* U.S. Courts Judicial Emergencies, *available at* https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last accessed Dec. 28, 2023).

[23] *Farley v. Novo Nordisk*, No. 2:23-cv-4866 (Dec. 8, 2023) (plaintiff resides in West Virginia); *Hammons v. Novo Nordisk*, No. 2:23-cv-4965 (Dec. 15, 2023) (plaintiff resides in Arkansas); *Shirley v. Novo Nordisk*, No. 2:23-cv-4980 (Dec. 15, 2023) (plaintiff resides in Florida); *Gray v. Novo Nordisk*, No. 2:23-cv-5031 (Dec. 19, 2023) (plaintiff resides in Alabama); *Geiglein v. Novo Nordisk*, No. 2:23-cv-5041 (Dec. 19, 2023) (plaintiff resides in Maryland).

travelers, including those in Denmark.  The Southern District of New York also is proximate to Novo's U.S. headquarters in New Jersey.  But unlike the District of New Jersey or the Eastern District of Pennsylvania, the Southern District of New York is relatively uncongested.[24]

Finally, as the Panel has recognized, the Southern District of New York has many capable jurists with MDL experience, who are well suited to handle this type of MDL.  *See In re Acetaminophen*, 637 F. Supp. 3d at 1376 (assigning MDL to the Honorable Denise L. Cote because she "is thoroughly familiar with the nuances of complex, multidistrict litigation by virtue of having presided over eight MDLs which have involved a broad range of complex issues, including pharmaceutical products liability and industrywide dockets").

## CONCLUSION

For these reasons, Lilly respectfully requests the Panel to exclude claims against Lilly from the proposed MDL.  If the Panel includes Lilly in the MDL, Lilly respectfully requests the Panel transfer the cases to the Southern District of Indiana or the Middle District of North Carolina.

December 29, 2023

*/s/Diana M. Watral*
Diana M. Watral, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorney for Defendant Eli Lilly and Company*

---

[24] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District (Dec. 15, 2023)*, available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2023.pdf (last accessed Dec. 28, 2023) (There are 9 pending MDLs in E.D. Pa., and while the S.D.N.Y. has 11 pending MDLs, it has significantly more judges than the E.D. Pa.).