Most BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL No. 3094 |

**INTERESTED PARTIES' RESPONSE IN OPPOSITION TO THE MOTION FOR TRANSFER OF ACTIONS TO THE UNITED STATES DISTICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA PURSUANT TO 28 U.S.C. §1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, Plaintiffs in constituent civil actions[1] submit this response in opposition to Jacklyn Bjorklund et al.'s Motion for Transfer of Actions to the United States District Court for the Western District of Louisiana Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. No. 1) (*hereinafter* "the Motion").

### I.   PRELIMINARY STATEMENT

While the undersigned is in favor of an MDL involving only the Novo Nordisk Defendants, the Motion before the Panel seeks to create a multi-product, multi-Defendant MDL involving competitors.[2] Novo Nordisk and Eli Lilly each manufacturer distinct, branded prescription medications that contain different molecules. Each product further has its own regulatory history,

---

[1] Plaintiffs are those in the following actions filed in the United States District Court for the Eastern District of Pennsylvania. *See Miller v. Novo Nordisk A/S, et al.*, No. 2;23-cv-03924-MRP (E.D. Pa. Sept. 20, 2023); *Brown v. Novo Nordisk A/S, et al.*, No. 2:23-cv-04846 E.D. Pa. Dec. 7, 2023); *Farley v. Novo Nordisk A/S, et al.*, No. 2:23-cv-04866 (E.D. Pa. Dec. 8, 2023); *Shirley v. Novo Nordisk A/S, et al.*, No. 2:23-cv-04980 (E.D. Pa. Dec. 15, 2023); *Geiglein v Novo Nordisk A/S, et al.*, No. 2:23-cv-05041 (E.D. Pa. Dec. 19, 2023).

[2] *See e.g.*, Robert Langreth, *New Ozempic Rival Is About to Make Your Weight Loss Drugs Cheaper*, Bloomberg (Nov. 8, 2023), available at https://www.bloomberg.com/news/articles/2023-11-08/ozempic-wegovy-face-weight-loss-drug-competition-from-lilly-s-zepbound (describing the competition between Novo Nordisk and Eli Lilly) (last visited Dec. 15, 2023).

1

labeling, marketing conduct, and side effects. The differences between these drugs, Defendants' conduct associated therewith, and the accompanying claims greatly overshadow any similarities they share. Furthermore, there are no allegations of conspiracy among these competitors, and most filed cases make claims against Novo Nordisk alone. *See* Dkt. 1-2. As further explained herein, the undersigned opposes the Motion to the extent it seeks the creation of a single, combined MDL involving multiple Defendants. However, the undersigned is supportive of a single MDL involving only Novo Nordisk, or two separate, Defendant-specific MDLs.

Additionally, while the question *whether* to consolidate these matters remains open, the Eastern District of Pennsylvania is the answer to the question of *where* to consolidate. A review of the relevant factors utilized by this Panel favors the Greater Philadelphia area[3]—where the Novo Nordisk Defendants (named in all but two cases)[4] are located and many cases are filed. The Eastern District of Pennsylvania offers a meaningful nexus to this matter, is conveniently situated, has a proven ability to handle an MDL involving prescription drugs, and retains strong statistics indicating an ability to effectively manage this matter. Accordingly, the undersigned submits that the Eastern District of Pennsylvania is the most appropriate forum. This is especially true to the extent the Panel is inclined to create an MDL involving only the Novo Nordisk entities, which the undersigned fully supports.

## II.   FACTUAL BACKGROUND

### A. <u>Novo Nordisk</u>

Plaintiffs in potential tag-along actions[5] have filed cases solely against Novo Nordisk, asserting claims of negligence, failure to warn, design defect, negligent misrepresentation and

---

[3] Sometimes referred to as the Delaware Valley or the Philadelphia metropolitan area.
[4] *See* Dkt. 1-2.
[5] *See supra* n. 1

marketing, and consumer protection law violations. These cases highlight Novo Nordisk's aggressive and misleading marketing tactics with respect to two prescription drugs manufactured by Novo Nordisk, Ozempic and Wegovy, as well as issues particular to those medications' labels and side effects. In addition to gastrointestinal injuries, such as gastroparesis and ileus, Plaintiffs in the potential tag-along matters have also suffered deep vein thrombosis (DVT) and death. *See e.g.*, *Shirley v. Novo Nordisk A/S, et al.*, No. 2:23-cv-04980 (E.D. Pa. Dec. 15, 2023); *Geiglein v Novo Nordisk A/S, et al.*, No. 2:23-cv-05041 (E.D. Pa. Dec. 19, 2023).

Ozempic and Wegovy contain the exact same active ingredient (semaglutide) and primarily differ based upon dosage, though they were approved for different uses. Ozempic was approved by the FDA in 2017 for type 2 Diabetes. Wegovy, which is essentially just a larger dose of Ozempic, was approved in June of 2021 for use in adults with obesity or overweight and at least one chronic health condition. Wegovy was later expanded to include the treatment of obesity in adolescents aged 12 years and older along with reduced calorie meal plan and exercise.

Over the last several years, Novo Nordisk has engaged in highly aggressive marketing tactics with respect to its semaglutide drugs, including direct-to-consumer advertising on television and social media, celebrity partnerships, detailing to U.S. Medical professions to promote sales of the drug, hiring key opinion leaders, creating websites under pseudonyms (i.e. "The Truth about Weight" and "It's Bigger Than Me") to promote the use of pharmaceutical drugs to manage obesity, and infiltrating physician groups, advocacy groups, and public health partners.  These efforts proved successful; in 2022, Ozempic ranked as the sixth most advertised prescription drug with a U.S. measured media spend of $181 million. Social media efforts have been resoundingly successful, and the hashtag #ozempic has 273 million views as of November 22, 2022, and hashtag #wegovyweightloss has 163.2 million views on TikTok as of September 8, 2023.

The Novo Nordisk entities, their manufacturing, and their marketing all have significant ties to the East Coast of the United States with a predominant connection to the Greater Philadelphia area. Indeed, nearly all the Novo Nordisk entities are registered or incorporated in Delaware.[6] Furthermore, the principal place of business for Defendant Novo Nordisk Inc. is Plainsboro, New Jersey,[7] and its holding companies are in Wilmington, Delaware. Thus, these three entities are located within a mere 30-50 miles of Philadelphia. Upon information and belief, the vast majority of Novo Nordisk's Wegovy and Ozempic products are produced on the East Coast,[8] and some assembly of Wegovy occurs through PCI, a company based in Philadelphia, Pennsylvania.[9] Additionally, the marketing agency that now leads the Wegovy account has four Pennsylvania offices, including one in Philadelphia.[10]

---

[6] The following are Delaware entities: Novo Nordisk Inc., Novo Nordisk US Commercial Holdings Inc., Novo Nordisk US Holdings Inc., Novo Nordisk Research Center Seattle, Inc., Novo Nordisk Pharmaceutical Industries LP, Novo Holdings Equity US Inc.

[7] Novo Nordisk Inc. is located a mere 16 miles from the New Jersey-Pennsylvania border.

[8] *See* Novo Nordisk, Who We Are, North Carolina, available at https://www.novonordisk-us.com/about/who-we-are/north-carolina.html ("Our Clayton Injectable Finished Products (IFP) facility was established over three decades ago as Novo Nordisk's first U.S. manufacturing location for diabetes and obesity medicines. Today, the vast majority of our U.S. injectable diabetes and obesity products are produced and packaged at the Clayton aseptic fill-finish site.") (last visited on Dec. 13, 2023).

[9] Maggie Fick, *Exclusive: Novo Nordisk hires private U.S. firm to handle some Wegovy pen assembly*, Reuters (Sept 18, 2023), available at https://www.reuters.com/business/healthcare-pharmaceuticals/novo-nordisk-hires-private-us-firm-handle-some-wegovy-pen-assembly-source-2023-09-18/ (last visited Dec. 13, 2023).

[10] *See* NewsWire, *Concentric Health Experience Named Agency of the Year at the 2022 Manny Awards* (Apr. 26, 2022), available at https://www.newswire.com/news/concentric-health-experience-named-agency-of-the-year-at-the-2022-21695158 (noting that Concentric Health Experience was awarded Launch of the Year for Novo Nordisk's WEGOVY) (last visited Dec. 13, 2023); *see also*, Accenture, News Room, *Accenture Completes Acquisition of Healthcare Marketing Agency Concentric Life* (Nov. 1, 2023), available at https://newsroom.accenture.com/news/2023/accenture-completes-acquisition-of-healthcare-marketing-agency-concentriclife (explaining that Accenture acquired ConcentricLife) (last visited Dec. 13, 2023); *see also*, Accenture Song, Find an Accenture Office, Pennsylvania, https://www.accenture.com/us-en/about/locations/office-details?loc=Pennsylvania (listing four offices in Pennsylvania and one in Philadelphia) (last visited Dec. 13, 2023).

Furthermore, Novo Nordisk intentionally targeted Philadelphia for many of its marketing efforts. This includes selecting Philadelphia as the second city in its "Cities Changing Diabetes" initiative,[11] partnering with a Philadelphia-based media company to create a documentary about obesity in America based on four Philadelphia women,[12] and hosting, sponsoring, and/or

---

[11] *See* Beth Snyder Bulik, *Novo Nordisk takes neighborhood approach to preventing diabetes in Philly, Fierce Pharma* (Dec. 6, 2019), https://www.fiercepharma.com/marketing/novo-nordisk-adds-philadelphia-to-its-roster-cities-involved-its-diabetes-prevention (last visited Dec. 14, 2023); *see also*, *C*ities Changing Diabetes, Philadelphia, available at https://www.citieschangingdiabetes.com/network/philadelphia.html (last visited Dec. 14, 2023).

[12] *See e.g.*, 2018 ISPE Annual Meeting & Expo: Welcome to Philly, ISPE (September-October 2018), available at https://ispe.org/pharmaceutical-engineering/september-october-2018/2018-ispe-annual-meeting-expo-welcome-philly (Lars Fruergarrd Jorgensen, the President and CEO of Novo Nordisk A/S, was the keynote speaker and the presentation was titled "From Vision to Reality: Delivering Next-Generation Diabetes Treatment.") (last visited Dec. 14, 2023); *see also*, Kimberly Knipe, *Walk from Obesity: Raising Funds in Philadelphia—Summer 2019*, Bariatric Times (Dec. 1, 2019), https://bariatrictimes.com/walk-from-obesity-raising-funds-in-philadelphia-summer-2019/ (Novo Nordisk sponsored "2019 Philadelphia Walk from Obesity and Fun Run") (last visited Dec. 14, 2023); *see also*, Greater Philadelphia Chamber of Commerce, *Member Perspective: Jenny Jackson* (March 16, 2021), https://chamberphl.com/2021/03/member-perspective-jenny-jackson/ (Associate Director of Policy in Novo Nordisk's Division of Market Access and Public Affairs presented to the Philadelphia Chamber about obesity and COVID-19's impact on Philadelphia) (last visited Dec. 14, 2023); *see also*, Philadelphia Eagles, Tackle Your Health, available at https://www.philadelphiaeagles.com/tackle-your-health/ (an obesity and diabetes initiative presented by Novo Nordisk) (last visited Dec. 14, 2023); *see also*, Novo Nordisk, Science Hub: Congresses https://sciencehub.novonordisk.com/congresses.html (listing two presentations in Philadelphia in 2023, one of which concerned "cardiovascular disease") (last visited Dec. 14, 2023); *see also*, Kevin Dunleavy, *Novo Nordisk says Wegovy can help heart disease patients— and not just because it produces weight loss*, Fierce Pharma (Nov. 13, 2023), https://www.fiercepharma.com/pharma/novo-nordisk-says-wegovy-can-help-heart-disease-patients-and-not-just-because-it-produces ("Perhaps even more importantly, Novo said this weekend in Philadelphia at the American Heart Association (AHA) Scientific Sessions that the cardiovascular benefits gained from Wegovy aren't due solely to weight loss.") (last visited Dec. 14, 2023); *see also*, Novo Nordisk, Investor Event in Connection with AHA, available at https://www.novonordisk.com/content/dam/nncorp/global/en/investors/pdfs/financial-results/2023/v2-aha-investor-rresentation-2023.pdf (discussing obesity and its need to be treated) (last visited Dec. 14, 2023).

presenting at Philadelphia-based events, research, and initiatives.[13] In 2018, Ozempic was the 8th most marketed drug in Philadelphia.[14]

### B. Eli Lilly

Eli Lilly's Mounjaro is an entirely different drug from Novo Nordisk's Ozempic (and, by extension, Wegovy).[15] Indeed, their labels differ significantly. For instance, unlike the labels for Ozempic and Wegovy, Mounjaro's label warns of "severe gastrointestinal disease" and even mentions gastroparesis twice, stating that it "has not been studied" in patients with gastroparesis and patients to speak with their doctor if they suffer from gastroparesis.[16] Notably, Mounjaro was only approved last year (five years after Ozempic) to improve glycemic control in adults with type 2 diabetes.[17]

---

[13] *See* John Newton, *Novo Nordisk's Thick Skin doc explores obesity in America*, Medical Marketing and Media (Sept. 18, 2023), https://www.mmm-online.com/home/channel/campaigns/novo-nordisks-thick-skin-doc/ ("*Thick Skin* follows the lives of four women in Philadelphia" and created with 9.14 Pictures in Philadelphia) (last visited Dec. 14, 2023); *see also*, Beth Snyder Bulik, *Novo Nordisk boosts anti-obesity stigma efforts with film and TV documentary partnerships*, Endpoints News (June 15, 2023), https://endpts.com/novo-nordisk-amps-up-efforts-to-dispel-obesity-stigma-with-tribeca-x-sundance-tv-debuts/ (last visited Dec. 14, 2023).

[14] *See* Philadelphia Department of Public Health, "Free Lunch? Drug Marketing Through Gifts of Meals to Physicians in Philadelphia", at 3, available at https://www.phila.gov/media/20200204150030/2020-drug-marketing-report_2_4_2020.pdf (last visited Dec. 14, 2023).

[15] *See Bjorklund v. Novo Nordisk A/S, et al.*, C.A. No.2:23-cv-01020-JSC-KK, Dkt. 5 (Amended Complaint), at ¶¶ 4-5 (Aug. 25, 2023 W.D.La) (identifying the active ingredient in each drug and describing their mechanisms).

[16] Eli Lilly and Company, Once Weekly Mounjaro (tirzepatide) Injection, available at https://www.mounjaro.com/hcp/a1c-weight?gclid=EAIaIQobChMI__HYktiPgwMVAajICh10jQKTEAAYASABEgLsVfD_BwE#safety-profile (last visited Dec. 14, 2023);

[17] *Id.*

C. **Pending Federal Actions**

The undersigned counsel represents five Plaintiffs with individual cases pending in the Eastern District of Pennsylvania,[18] and there are currently nine cases pending in that district. There is also a related case pending in the Eastern District of New York.[19] While twelve cases are filed in the Western District of Louisiana (the forum movants are seeking),[20] there are almost as many cases filed on the East Coast.[21]

---

[18] *See supra* n. 1.
[19] *See Andino v. Novo Nordisk A/S et al.*, No. 2:23-cv-08868-LGD (E.D.N.Y. Dec. 1, 2023).
[20] Dkt. 1-2. *See also*, *Jones v. Novo Nordisk A/S et al.*, No. 6:23-cv-06684 (W.D. La. Dec. 1, 2023); *Lewis v. Novo Nordisk A/S et al.*, No. 5:23-cv-01763 (W.D. La. Dec. 15, 2023); *Taylor v, Novo Nordisk A/S et al.*, No. 2:23-cv-01768 (W.D. La. Dec. 18, 2023); *Romero v. Novo Nordisk A/S et al.*, No. 2023-cv-01781 (W.D. La. Dec. 21, 2023); *Latham v. Novo Nordisk A/S et al.*, No. 2:23-cv-01792 (W.D. La. Dec, 27, 2023); *Thomas v. Novo Nordisk A/S et al.*, No. 2023-cv-01793 (W.D. La. Dec. 27, 2023); *Arender v. Novo Nordisk A/S et al.*, No. 2023-cv-01800 (W.D. La. Dec. 28, 2023).
[21] At present, the undersigned is aware of ten federal cases filed in the following east coast states: New York and Pennsylvania. *See* Dkt. 1-2. *See also supra* n. 1. *See also*, *Andino v. Novo Nordisk A/S et al.*, No. 2:23-cv-08868-LGD (E.D.N.Y. Dec. 1, 2023); *Hammons v. Novo Nordisk A/S et al.*, No. 2:23-cv-04965 (E.D.P.A. Dec. 15, 2023); *Mayer v. Novo Nordisk Inc. et al.*, No. 2:23-cv-04969 (E.D.P.A. Dec. 15, 2023); *Marrero v. Novo Nordisk et al.*, No. 2:23-cv-05036 (E.D.P.A. Dec. 19, 2023); *Gray v. Novo Nordisk A/S et al.*, No. 2:23-cv-05031 (E.D.P.A. Dec. 19, 2023).

7

### III.     ARGUMENT

**A. The Panel should deny the Motion insofar as it seeks a multi-product, multi-Defendant MDL.**

*1. Consolidating cases against Novo Nordisk and Eli Lilly will not promote just and efficient conduct of those actions.*

Under 28 U.S.C. §1407(a), civil actions may be transferred for coordinated or consolidated pretrial proceedings if the following conditions are met: (1) the cases involve "common questions of fact[,]" (2) transfer "will be for the convenience of parties and witnesses[,]" and (3) transfer "will promote just and efficient conduct of such actions."[22] The parties moving for centralization bear the burden of demonstrating that transfer will further the purposes of §1407.[23]

In this matter, a class-wide MDL involving separate, competing manufacturers does not offer common questions of fact such that consolidation will promote just and efficient resolution. Indeed, a class-wide MDL would include multiple products with different active ingredients and different labels. To make matters worse, a class-wide MDL would include multiple Defendants who are competitors and have engaged in different marketing conduct. Thus, discovery specific to each Defendant, their products, and conduct will predominate.

Novo Nordisk's drugs have different molecules and labels than Mounjaro. Each drug has its own unique combination of materials, regulatory history, accompanying instructions, warnings, side effects, and marketing conduct. All these issues will require Defendant-specific discovery and

---

[22] 28 U.S.C. § 1407(a).
[23] *See e.g., In re Children's Pers. Care Prods. Liab. Litig.*, 655 F. Supp. 2d 1365 (J.P.M.L. 2009) ("proponents of centralization have failed to convince us…"); *see also*, *In re Depo-Provera Prods. Liab. Litig.*, 499 F. Supp. 2d 1348, 1349 (J.P.M.L. 2007) ("proponents of centralization have failed to convince us…"); *see also*, *In re Aredia & Zometa Prods. Liab. Litig.*, 429 F. Supp. 2d 1371, 1372 (J.P.M.L. 2006) ("Movants have failed to persuade us…"); *see also*, *In re: Zimmer v. Zimmer, Inc.*, 237 F. Supp. 2d 1376 (J.P.M.L. 2002) ("Movant has failed to demonstrate…"); *see also*, *In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*, 483 F. Supp. 1343, 1345 (J.P.M.L. 1980) ("movants have not met their burden of demonstrating that transfer will further the purposes of Section 1407").

will impact significant legal issues posed by these cases. For example, neither the Ozempic nor Wegovy labels warn of gastroparesis or delayed gastric emptying, but Mounjaro's label warns of "severe gastrointestinal disease" and mentions gastroparesis twice. This defendant-specific information will be pertinent when it comes to deciding important legal issues, such as preemption and failure to warn. Furthermore, there is a significant difference in the marketing conduct by Novo Nordisk as compared to Eli Lilly, and the associated claims asserted by Plaintiffs against Novo Nordisk highlight this (i.e., misrepresentation and unfair practices). As a result, multiple tracks will be required for discovery, motions for summary judgment, and bellwether trials.

Plaintiffs in the potential tag along actions further allege a panoply of injuries that appear to be specific to Novo Nordisk's products, including DVT. *See e.g.*, *Shirley v. Novo Nordisk A/S, et al.*, No. 2:23-cv-04980 (E.D. Pa. Dec. 15, 2023). Accordingly, the underlying scientific discovery and issues of causation will not be identical across Defendants, and varying experts will be required. Because the common issues in these cases will be overshadowed by the non-common issues, corralling both Defendants into one MDL will "significantly undermine[] any efficiency gains to be achieved from centralization." *See In re: Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, *1362 (J.P.M.L. Feb. 2, 2017), *overruled by In re: Proton-Pump Inhibitor Prods. Liab. Litig.*, 261 F. Supp. 3d 1351, *1354 (J.P.M.L. 2017) (following new circumstances, including defendants' support for centralization and the fact that defendants' drugs were not subject to patent protection, centralization was allowed, though it was noted that "several of the grounds on which [the Panel] denied centralization [the first time] remain largely valid" and the circumstances presented were "unusual").

To complicate matters further, Defendants are competitors who manufactured and marketed different drugs and they are likely to assert trade secret and/or confidentiality concerns, which will

pose further complications to managing this litigation. This Panel has indicated that it is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products." *See e.g.*, *In re: Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d. 1377, 1378 (J.P.M.L. 2012). Indeed, "[c]entralizing competing defendants in the same MDL may unnecessarily complicate case management due to the need to protect trade secret and confidential information." *In re: Invokana (Canagliflozin) Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 189121, *6-7 (J.P.M.L. 2016) (citing *In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d. 1350, 1351 (JPML 2012) ('Centralization of all actions against manufacturers will add few efficiencies to the resolution of this litigation,' and 'could complicate these matters, as defendants may need to erect complicated confidentiality barriers, since they are business competitors.')). Thus, creating an MDL including both Novo Nordisk and Eli Lilly "would seem to complicate pretrial proceedings more than it would streamline them." *In re: Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 1345, 1346 (J.P.M.L. 2020).

The Panel has previously denied requests to centralize cases involving a class of drugs, where competitors are involved, instead choosing to create a defendant-specific MDL. For instance, in *In re: Invokana (Canagliflozin) Prods. Liab. Litig.*, the "central dispute" considered by the Panel was whether the proposed MDL should be focused only on Invokana/Invokamet[24] or whether it should also include other Sodium Glucose Cotransporter 2 ("SGLT2") inhibitors by competing manufacturers. 2016 U.S. Dist. LEXIS 189121 at *3. While the Invokana/Ivokamet cases involved common questions of fact and centralizing would further the purpose of § 1407,

---

[24] Invokana and Invokamet are sister drugs, developed and manufactured by a single defendant, Janssen. *In re: Invokana (Canagliflozin) Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 189121, *2-3 (J.P.M.L. 2016). This is similar to Ozempic and Wegovy—sister drugs both manufactured by Novo Nordisk.

10

the Panel decided to exclude SGLT2s by other manufacturers. As the Panel recognized "a multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *Id.* at *7. The Panel further noted that the number of cases involving SGLT2 inhibitors other than Invokana/Invokamet was "relatively small" at twenty of the forty-four potential tag-along actions. *Id.* at *3, n.3, *7. Accordingly, the Panel concluded that "class-wide centralization [was] not warranted" and, instead, centralization was limited to Invokana/Invokamet cases. *Id.* at *6-7.

Here, like in *Invokana*, the proposed MDL is defined by a drug class that involves multiple Defendants, who are competitors. Like in *Invokana*, the Panel should consider the disadvantages of a multi-product, multi-defendant MDL. Indeed, while centralization of those cases against Novo Nordisk would further § 1407, given that their drugs have the same molecule and they were developed by the same Defendant, the same is not true for the small minority of cases involving Eli Lilly. The variety of differences in the labels and Defendants' conduct related to the same will predominate and present significant challenges to efficiently handling this MDL. An MDL including both Defendant families presents significant individualized fact questions, and the inclusion of competitors will not promote the just and efficient conduct of such actions.[25] Instead, like *Invokana*, the Panel should form a Defendant-specific MDL to include only the Novo Nordisk family of Defendants.

This panel has been hesitant to form class-wide MDLs involving competitors, particularly where each has its own patent, combination cases are the exception, and there is not universal support for a multi-defendant consolidation. For example, in *In re: Proton-Pump Inhibitor Prods.*

---

[25] The Panel has also previously declined to centralize cases that include differing claims on the basis that individual questions of fact will predominate. *See e.g.*, *In re Depo-Provera rods. Liab. Litig.*, 499 F.Supp.2d 1348 (JPML 2007) (denying Section 1407 since the claims asserted were not the same).

11

*Liab. Litig.*, while the Panel granted the motion, it also noted that defendants supported centralization and the drugs at issue were not subject to patent protection, which made defendants' status as competitors with trade secrets "less of an issue[.]" 261 F. Supp. 3d at 1354, n.6. Likewise, *In re: Diet Drugs* included generic medications. 990 F. Supp. 834 (J.P.M.L. 1998). Furthermore, while *In re: Prempro Prods. Liab. Litig.* involved two defendants, they were related entities (a parent and subsidiary). 254 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003). But here, Novo Nordisk and Eli Lilly are not related entities, and their branded products are subject to patents. Accordingly, their competitor status and the accompanying remain valid.

The panel has also allowed class-wide consolidation, where there was a class-wide investigation by the FDA and "a number of plaintiffs used more than one" product. *See in re: AndroGel*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014). Here, however, there has been no such announcement by the FDA regarding GLP1s as a class, and currently only five of the thirty-nine filed cases involve more than one Defendant.[26] Furthermore, in those cases involving more than one Defendant, plaintiffs will need to establish causation for each product separately.

> 2. With respect to the cases against Eli Lilly, alternatives to centralization under Section 1407 are available to the pending Federal actions.

This "Panel has often stated that centralization under Section 1407 'should be the last solution after considered review of all other options.' "[27] "These options include: … cooperation and coordination among the parties and the various … courts."[28] The parties and respective courts

---

[26] *See* Dkt. 1-2. *See also*, *Andino v. Novo Nordisk A/S, et al.*, No. 2:23-cv-08868-LGD (E.D.N.Y. Dec. 1, 2023); *Thomas v. Novo Nordisk A/S et al.*, No. 2023-cv-01793 (W.D. La. Dec. 27, 2023); *Arender v. Novo Nordisk A/S et al.*, No. 2023-cv-01800 (W.D. La. Dec. 28, 2023).

[27] *In re Gerber Probiotic Prods. Mktg.*, 899 F.Supp.2d 1378, 1379 (JPML 2012) (quoting *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*, 804 F.Supp.2d 1376, 1378 (JPML 2011)).

[28] *In re Gerber Probiotic Prods. Mktg.*, 899 F.Supp.2d at 1380. *See also*, *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litigation*, 446 F. Supp. 242, 243-244, (JPML 1978) ("We

should endeavor to coordinate discovery and avoid duplicative activities.[29] Because §1407 is seen as a last resort, the Panel has declined to centralize in cases where voluntary cooperative efforts or other alternatives are available.[30]

Upon review of the Schedule of Actions and corresponding complaints, only seven filed cases involve Eli Lilly.[31] That is not a significant number of cases such that litigation would be unmanageable without centralization. Conceivably, these plaintiffs could coordinate discovery regarding Eli Lilly and/or seek Section 1404 transfer separately. As noted above, issues pertaining liability, including conduct and causation, for each Defendant must be established independently. Thus, there are alternatives to centralization given the small number of cases against Eli Lilly.

---

observe that suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery. For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all those actions; and any party could seek orders from the three courts directing the parties to coordinate their pretrial efforts.")

[29] See David F. Herr, MANUAL FOR COMPLEX LITIGATION, FOURTH, at §20:14 (2017). See also, In re: Glucagon-like Peptide-1 Receptor Agonists (GLP-1 Ras) Products Liability Litigation, MDL No. 3094, Notice of Filing and Publication of Briefing Schedule re: pldg. ([1 in MDL No. 2846), Dkt. 5 (J.P.M.L. Dec. 5, 2023) ("[i]n their briefs, the parties should address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)").

[30] See e.g., In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig., 959 F.Supp.2d 1375, 1376 (JPML 2013) (denying centralization since the parties were able to appropriately coordinate common discovery and pretrial matters); see also, In re Children's Pers. Care Prods. Liab. Litig., 655 F.Supp.2d at 1366 (JPML 2009) ("Alternatives to transfer exist that may minimize whatever possibilities could arise of duplicative discovery and/or inconsistent pretrial rulings."); see also, In re Zimmer v. Zimmer, Inc., 237 F.Supp.2d 1376 (JPML 2002) ("we are persuaded that alternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery and inconsistent pretrial rulings.").

[31] See supra n. 26.

**B. If the panel creates an MDL involving Novo Nordisk, the Eastern District of Pennsylvania is the proper forum.**

Numerous factors may be considered by the Panel in determining the most appropriate forum for an MDL.[32] Some factors that may be considered include the following: location of the evidence and witnesses,[33] place of the tort,[34] centrality,[35] venue of pending actions,[36] coordination with state court proceedings,[37] familiarity with issues,[38] overall docket conditions,[39] and district where jurisdiction is available.[40] Here, the balance of these factors weigh in favor of the Eastern District of Pennsylvania. As of December 28, 2023, the Eastern District of Pennsylvania is the second most numerous forum and is only a few cases shy of that pending in the Western District of Louisiana. Additionally, there are many cases filed on the East Coast.[41] Indeed, the Eastern District of Pennsylvania is quite close to the Novo Nordisk entities and the torts committed in this case. Within the Eastern District of Pennsylvania, the undersigned requests the Panel appoint Judge Wendy Beetlestone, who has the experience, availability, and record necessary to efficiently manage this matter.

The Eastern District of Pennsylvania is the geographic focal point for Novo Nordisk. Because most of the Novo Nordisk Defendants are incorporated in Delaware and three of the entities reside within 30-50 miles of the Eastern District of Pennsylvania, the undersigned counsel expects that the vast majority of documents and witnesses are already located in the vicinity of the

---

[32] *See generally,* David F. Herr, MULTIDISTRICT LITIGATION MANUAL: PRACTICE BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, Chapter 6 (2017).
[33] *See id.,* at §6:5.
[34] *See id.,* at §6:6.
[35] *See id.,* at §6:7.
[36] *See id.,* at §6:8.
[37] *See id.,* at §6:13.
[38] *See id.,* at §6:14.
[39] *See id.,* at §6:17.
[40] *See id.,* at §6:20.
[41] *See supra* n. 21.

District. Furthermore, a significant amount of marketing conduct and some assembly occurred in Philadelphia. Additionally, manufacturing and production occurred on the East Coast. Thus, transfer of the related actions to the Eastern District of Pennsylvania would save the parties and witnesses an enormous amount of time and money in travel and other discovery-related expenses.

Additionally, Philadelphia is a major city that is easily accessible by most places throughout the country. Indeed, Philadelphia airport has 457 nonstop flights each day, serving 108 nonstop destinations, including many of the states where other plaintiffs in other tag-along actions are from (New York, Iowa, Nebraska, Utah, and Wisconsin).[42] Further, with Amtrak and Acela services running through Philadelphia, along with major highways, the Eastern District of Philadelphia can be easily accessed from many places on the East Coast by car or train.

There are currently nine cases filed in the Eastern District of Pennsylvania. The Eastern District of Philadelphia is a modern and efficient forum, capable of handling these coordinated pretrial proceedings—as evidenced by the many MDLs that have been litigated to completion there, including MDLs involving prescription medications.[43] As this Panel is aware, the Eastern District of Pennsylvania is familiar with MDLs but does not currently have an overwhelming multidistrict litigation docket. There are currently nine pending MDLs in the Eastern District of Pennsylvania, but the volume of remaining cases is relatively low with six of these MDLs having less than a dozen pending cases each.[44] Additionally, with 22 judges and, on average, 368 cases

---

[42] PHL, Route Maps, https://www.phl.org/about/about-us/route-maps (last visited Dec. 15, 2023).
[43] *See e.g.*, U.S. J.P.M.L., MDL Statistic Report – Distribution of Pending MDLs by District, at 3 (Nov. 26, 2023), available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-16-2023.pdf (MDL -1871 IN RE: Avandia Marketing, Sales Practices and Products Liability Litigation had over 5,000 cases but now has zero pending cases). (last visited Dec. 15, 2023).
[44] *See id.*

pending per judge, the Eastern District of Pennsylvania can easily handle this MDL.[45] Finally, the Eastern District of Pennsylvania has proven successful at quickly resolving civil cases—a mere 29% of civil cases exceed three years old and the median time interval from filing to resolution is a mere 7 months.[46] For all of these reasons, the Eastern District of Pennsylvania is the more appropriate for an MDL.

Additionally, the undersigned requests that the Panel consider appointing Judge Beetlestone within the Eastern District of Pennsylvania, who currently has six of these cases pending before her. Judge Beetlestone is an accomplished jurist and received her commission nearly a decade ago, in 2014. Prior to her judicial service, Judge Beetlestone gained significant experience handling complex litigation in private practice. Judge Beetlestone further teaches a class called Remedies and Litigation Strategy at the University of Pennsylvania Carey Law School, a class focused on civil litigation and specifically the details associated with effective pleading.[47]

Since taking the bench, Judge Beetlestone's docket has predominantly consisted of tort and product liability matters. Ex. 1. Indeed, the vast majority of Judge Beetlestone's docket currently consists of product liability matters. *Id*. Judge Beetlestone currently has just 305 pending cases before her, 174 of which are product liability and at least six are related actions. *Id*. Given her relevant background, current caseload, and judicial record, Judge Beetlestone would be an excellent choice for this MDL.

---

[45] U.S. District Courts – National Judicial Caseload Profile, at 16 (Sept. 30, 2023), available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf (last visited Dec. 15, 2023).
[46] *Id.* at 16.
[47] University of Pennsylvania Carey Law School, Course Finder, available at https://goat.law.upenn.edu/cf/coursefinder/browse/ (limited by instructor) (last visited Dec. 19, 2023).

## IV.  CONLCUSION

For the foregoing reasons, the Panel should deny the Motion under 28 U.S.C. §1407 to the extent it seeks to create a multi-Defendant MDL and to the extent it seeks to transfer these cases to the Western District of Louisiana. Instead, the undersigned respectfully requests that the proposed MDL be limited only to those actions involving Novo Nordisk and that those cases involving Novo Nordisk be transferred to the Eastern District of Pennsylvania. To the extent the Panel is inclined to consolidate matters involving GLP-1s other than those manufactured by Novo Nordisk, the undersigned respectfully requests separate, Defendant-specific MDLs so that the litigation can be managed effectively.

Dated: January 3, 2024             Respectfully submitted,

*/s/ Jonathan D. Orent*
Jonathan D. Orent
**Motley Rice LLC**
40 Westminster St., 5th Floor
Providence, RI 02903
401-457-7723
401-457-7708 (fax)
jorent@motleyrice.com

*On behalf of Plaintiffs in the following matters: Miller v. Novo Nordisk A/S, et al.*, No. 2;23-cv-03924-MRP (E.D. Pa. Sept. 20, 2023); *Brown v. Novo Nordisk A/S, et al.*, No. 2:23-cv-04846 E.D. Pa. Dec. 7, 2023); *Farley v. Novo Nordisk A/S, et al.*, No. 2:23-cv-04866 (E.D. Pa. Dec. 8, 2023); *Shirley v. Novo Nordisk A/S, et al.*, No. 2:23-cv-04980 (E.D. Pa. Dec. 15, 2023); *Geiglein v Novo Nordisk A/S, et al.*, No. 2:23-cv-05041 (E.D. Pa. Dec. 19, 2023).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of January, 2024, a copy of the foregoing was filed electronically with the Clerk of the Court via the CM/ECF system which will send a notice of filing to all counsel of record registered with the Court's CM/ECF system.

*/s/ Alison Lopes*
Alison Lopes