BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL No. 3094 |

**INTERESTED PARTY RESPONSE IN OPPOSITION TO THE MOTION FOR TRANSFER OF ACTIONS TO THE WESTERN DISTRICT OF LOUISIANA AND IN SUPPORT OF A NOVO NORDISK-ONLY MULTIDISTRICT LITIGATION IN THE EASTERN DISTRICT OF PENNSYLVANIA**

I.  **INTRODUCTION**

Pursuant to Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, Michelle Gray ("Plaintiff")[1], a named plaintiff in a lawsuit filed against Novo Nordisk A/S, et al. in the United States District Court for the Eastern District of Pennsylvania, respectfully submits this response in opposition to Jacklyn Bjorklund, *et al.*'s Motion for Transfer of Actions to the United States District Court for the Western District of Louisiana Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. No. 1) (*hereinafter* "the Motion").

For the reasons set forth below, Plaintiff concurs with the Opposition filed by plaintiff Kelly Miller (Dkt. No. 50) and, therefore, asks the Panel to: (1) deny the Motion insofar as it seeks a multi-product, multi-defendant multidistrict litigation ("MDL") in the Western District of Louisiana; (2) instead select the Eastern District of Pennsylvania as the proper forum for an MDL involving Novo Nordisk and its related entities for injuries caused by use of Ozempic and/or Wegovy (hereinafter "Novo Nordisk GLP-1 RAs"); and (3) select Hon. Wendy

---

[1] *See Gray v. Novo Nordisk A/S, et al.,* No. 2:23-cv- 005031-WB (E.D. Pa. December 19, 2023).

Beetlestone, a highly experienced jurist in the Eastern District of Pennsylvania who is already assigned to six (6) Novo Nordisk GLP-1 RA cases filed within the District, to oversee this potential MDL.

II. **ARGUMENT**

    **A. The Panel Should Deny Movants' Application to Create a Multi-Defendant MDL in the Western District Louisiana.**

Given the complexity and expected scale of the cases involving Novo Nordisk's GLP-1 RAs, centralization pursuant to 28 U.S.C. §1407 does appear necessary for the efficient management of judicial and party resources. However, the benefits of MDL consolidation—namely, uniform pleadings, streamlined fact and expert discovery, and motion practice involving the same or similar legal concepts and fact patterns—may be undermined by formation of an MDL that includes an entire class of drugs and unrelated, competitor defendants. The truth of the matter is that Novo Nordisk's GLP-1 RAs (Ozempic and Wegovy) are substantially different than Eli Lilly's Mounjaro. The Novo products are distinguishable from Mounjaro in chemical composition, approval history, marketing, sales, and labeling. In fact, as addressed in plaintiff Kelly Miller's opposition (Dkt. No. 50), the manufacturers even warn differently about the prospect for some of the same injuries that are at issue in these cases.

For those reasons, and the reasons set forth more fully in the opposition filed by plaintiff Kelly Miller (Dkt. No. 50), the Panel should form a Defendant-specific MDL to include only Novo Nordisk and their related entities for all cases alleging injuries caused by their specific GLP-1 RAs.

### B. The Panel Should Select the Eastern District of Pennsylvania as the Most Appropriate Forum for a Novo Nordisk GLP-1 RA MDL.

The Eastern District of Pennsylvania ("EDPA"), located in downtown Philadelphia, is the most appropriate forum for a Novo Nordisk GLP-1 RA MDL. First, at the time of writing, EDPA is home to nine (9) cases involving injuries caused by Ozempic and/or Wegovy. At least six of those cases are being overseen by the Hon. Wendy J. Beetlestone, a jurist with considerable experience in products liability and, specifically, pharmaceutical personal injury cases.

Second, EDPA sits in the large metropolis of Philadelphia, a city well-equipped to handle national mass tort litigation and conveniently located as an intersection of sorts for the parties and conduct at issue in this litigation. Philadelphia is our nation's sixth largest city and would serve as an easily accessible host to litigators and interested parties from across the world.[2] As has been previously identified in related briefing, the Philadelphia International Airport and Amtrak rail system—less than ten (10) miles and two (2) miles, respectively, from the federal courthouse—make travel from virtually anywhere achievable and relatively easy. The city has numerous event spaces helpful for litigation meetings and plentiful hotel and lodging options all within touching distance of the EDPA courthouse. As Philadelphia is frequently recognized as one of the premier tourist destinations in the world, it should serve as an uncontroversial and even preferable location for this MDL.[3]

Moreover, EDPA sits in the heart of the "tristate" area that is also home to Novo Nordisk's

---

[2] Richard Suter, *The 100 largest cities in the U.S. by population 2023*, Yahoo!, Dec. 31, 2023, https://sports.yahoo.com/california-exodus-100-largest-cities-184532611.html (Last Accessed: Jan. 5, 2024)

[3] Henry Savage, *Philly is the best U.S. city to visit in 2024, according to Lonely Planet travel guide*, Philadelphia Inquirer, Oct. 27, 2023, https://www.inquirer.com/business/tourism/philadelphia-best-travel-city-tourism-lonely-planet.html   (Last Accessed: Jan. 5, 2024)

corporate locations of Wilmington, Delaware, and Plainsboro, New Jersey.  In fact, Philadelphia is only 30 miles from Wilmington and 50 miles from Plainsboro, making it a short drive for any of the Defendants' employees attending a hearing or sitting for deposition.  Significantly, the proximity of less than 100 miles between the courthouse and Defendants' corporate facilities will also allow an EDPA judge to compel in-person attendance of corporate witnesses whose deposition and trial testimony will be key to the case and allow for a smoother and more compelling trial.[4]  The Defendants of course have also used Philadelphia as a hub for their marketing activities and targeted the city for several of their obesity and wellness campaigns.[5]  They even have committed to building component parts for Wegovy in Philadelphia.[6]  Simply put, there is substantial activity and conduct related to this litigation that has occurred in or around Philadelphia and the Northeastern region, leaving EDPA as a more logical nexus for this case than any of the other proffered venues.

Third, and perhaps most importantly, EDPA has a long history of successfully managing complex MDLs and now has the capacity and judicial resources available to take on another. Historically, EDPA has been home to some very large and complex MDLs, including but not limited to: *In Re: Zoloft Products Liability Litigation*;  *In Re: National Football League Players' Concussion Injury Litigation*; *In Re: Avandia Marketing, Sales Practices* a*nd Products Liability Litigation; In Re*: *Asbestos Products Liability Litigation (No. VI)*; *In Re: Diet Drugs (Phentermine / Fenfluramine /* Dexfenfluramine*) Products Liability Litigation*;  *In Re: Tylenol (Acetaminophen) Marketing, Sales Practices and Products Liability Litigation*; and, *In Re: Generic Pharmaceuticals*

---

[4] *See, e.g., Salsman v. Witt*, 466 F.2d 76 (10th Cir. 1972) (courts have expressed a preference for live testimony at trial).
[5] *See* Plaintiff's Complaint [Dkt. No. 30, Ex. 3] at pgs. 4-5, ¶ 24 - ¶ 30.
[6] *Id.* at pg. 5, ¶ 24.

4

*Pricing Antitrust Litigation.* Several of the above MDLs involved the same subject matter that will be litigated in the prospective MDL pending before the Panel: injuries caused by pharmaceutical products.

Despite that longstanding history, Pennsylvania's MDLs are aging and, as of January 2023, have overall fewer cases pending in comparison to MDLs that are pending in other jurisdictions.[7] Pennsylvania's overall share of individual actions (cases) in MDL proceedings is *less than one percent* of the nearly 400,000 individual MDL actions nationwide[8] and Pennsylvania's federal district courts administer only 14 of the approximately 171 currently active MDL dockets—a little more than 8% of the nationwide total. Four of those involve products liability cases, which historically represent a significant portion of the overall MDL proceeding types and the category with the largest overall number of individual claims, both in the Commonwealth and nationwide.[9] Of the nine MDLs pending in the Eastern District of Pennsylvania, the volume of remaining cases within those MDLs is low with six of the MDLs having less than a dozen cases pending in each.[10] EDPA's bandwidth and ability to effectively and efficiently oversee a new MDL, along with the strong qualities of the host city as expressed above, make the Eastern District of Pennsylvania the best forum for an MDL involving Novo Nordisk's GLP-1 RAs.

---

[7] Molly Flynn, Chanda Miller, and Rebecca Trela, *Will Pa. Keep Its Share of MDLs? An Analysis of Proceedings Across State District Courts*, The Legal Intelligencer, Jan. 15, 2023, https://www.law.com/thelegalintelligencer/2023/01/15/will-pa-keep-its-share-of-mdls-an-analysis-of-proceedings-across-state-district-courts/

[8] *Id.*

[9] *Id.*

[10] U.S. District Courts – National Judicial Caseload Profile, at 16 (Sept. 30, 2023) https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf (last visited Jan. 3, 2024).

### C. EDPA Judge Wendy Beetlestone has the Requisite Experience and Ability to Oversee this MDL.

At present, six (6) of the nine (9) Novo Nordisk actions relating to Ozempic and/or Wegovy that are pending in EDPA are assigned to Judge Wendy Beetlestone. Judge Beetlestone has the experience, ability, and seemingly the bandwidth to oversee a Novo Nordisk GLP-1 RA MDL. Judge Beetlestone, a graduate of The University of Liverpool and The University of Pennsylvania Carey School of Law, was appointed to the federal bench in 2014 after spending her private practice career litigating complex cases.[11] In her over nine years in the Eastern District, Judge Beetlestone has presided over a wide variety of products liability and personal injury actions giving her ample experience with the complex factual and legal issues that are likely to arise in this litigation.[12]

Importantly, Judge Beetlestone has experience presiding over complex multi-plaintiff pharmaceutical injury cases, like the one at bar. Over the last five years, Judge Beetlestone successfully managed *In Re: Injectafer Products Liability Litigation*, No. 19-276 ("Injectafer"), a consolidated pharmaceutical products liability case involving injuries allegedly caused by an injectable iron medicine. Injectafer involved issues—some common in pharmaceutical MDLs and some unique to a case involving foreign defendants—likely to emerge in this case, including: the FDA preemption defense,[13] jurisdictional challenges raised by a foreign defendant, discovery and document protection issues raised by a foreign defendant, and of course choice of law

---

[11] The American Law Institute, Elected Member: The Hon. Wendy Beetlestone Philadelphia, PA, https://www.ali.org/members/member/383663/ (last visited Jan. 3, 2024).

[12] For example, Judge Beetlestone has issued opinions on complex legal issues in many products and medical cases. *See, e.g., Smith v. Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844 (E.D. Pa. 2017) (allegedly defective medical device); *Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 169 (E.D. Pa. 2015) (allegedly defective vaccine); *Kotsur v. Goodman Glob.,* Inc., 2016 WL 4430609, at *1 (E.D. Pa. Aug. 22, 2016) (allegedly defective HVAC units).

[13] *Crockett v. Luitpold Pharms.*, Inc., No. CV 19-276, 2020 WL 433367 (E.D. Pa. Jan. 28, 2020).

analyses that come to a head when dealing with plaintiffs and defendants from diverse jurisdictions.[14] At its peak, the Injectafer consolidated litigation included over 160 cases, but now only about a dozen remain with almost all the remaining cases expected to be dismissed in the very near future.

While successfully managing that complex litigation along with rest of her docket, Judge Beetlestone was formally installed as the new Chancellor of the University of Liverpool in July 2023, becoming the "University's eleventh Chancellor and the institution's first female, and first Black, Chancellor."[15] Of course, Judge Beetlestone remains physically located in Philadelphia where she carries out her responsibilities as a District Judge and faculty member at the University of Pennsylvania Carey Law School.[16] Surprisingly, Judge Beetlestone has not yet been appointed to oversee an MDL. Given her ample qualifications and the Panel's precedent for assigning MDLs to experienced judges who have yet to manage an MDL,[17] Judge Beetlestone is an ideal selection should the litigation be transferred to EDPA.

---

[14] *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742 (E.D. Pa. 2019).

[15] University of Liverpool, *University of Liverpool officially installs new Chancellor*, July 18, 2023, https://news.liverpool.ac.uk/2023/07/18/university-of-liverpool-officially-install-new-chancellor/ (last visited Jan. 3, 2024)

[16] University of Pennsylvania Carey Law School, Course Finder, available at https://goat.law.upenn.edu/cf/coursefinder/browse (last visited Jan. 3, 2024); *see also* https://www.law.upenn.edu/faculty/wbeetles (last visited Jan. 4, 2024).

[17] *See generally, In re Genentech Herceptin (trastuzumab) Mktg. & Sales Practices Litig.*, 178 F. Supp. 3d 1374, 1376 (J.P.M.L. 2016); *In re The Honest Co., Inc., Sodium Lauryl Sulfate (SLS) Mktg. & Sales Practices Litig.*, 222 F. Supp. 3d 1349, 1350 (J.P.M.L. 2016); *In re Ermi LLC ('289) Patent Litig.*, 396 F. Supp. 3d 1358, 1360 (J.P.M.L. 2019); *In re TransUnion Rental Screening Sols., Inc., Fair Credit Reporting Act Litig.*, 437 F. Supp. 3d 1377, 1378 (J.P.M.L. 2020); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016); *In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017); *In re Atrium Med. Corp. C-Qur Mesh Prod. Liab. Litig.*, 223 F. Supp. 3d 1355, Case MDL No. 2973 1357 (J.P.M.L. 2016).

### III. CONCLUSION

For the foregoing reasons, the Panel should deny the Motion under 28 U.S.C. §1407 to the extent it seeks to create a multi-Defendant MDL and to the extent it seeks to transfer these cases to the Western District of Louisiana. The Panel should instead create a separate MDL to include only those actions involving Novo Nordisk GLP-1 RAs and consolidate those actions in the most appropriate forum, the Eastern District of Pennsylvania.[18] Within that District, the Panel should appoint Hon. Wendy Beetlestone to oversee the resulting MDL.

Dated: January 5, 2024

Respectfully submitted,

**POGUST GOODHEAD, LLC**

*/s/ Michael G. Daly*
Michael G. Daly, Esq.
mdaly@pogustgoodhead.com
Daniel J. Harrison, Esq.
dharrison@pogustgoodhead.com
161 Washington Street, Suite 250
Conshohocken, PA 19428
t: (610) 941-4204

*On behalf of Plaintiff in the following matter: Gray v. Novo Nordisk A/S, et al.*, No. 2:23-cv-005031-WB (E.D. Pa. December 19, 2023)

---

[18] Plaintiff takes no position as to whether the Western District of Louisiana is an appropriate venue for an Eli Lilly-only MDL. While Plaintiff believes the Novo Nordisk GLP-1 RA products should be litigated separately from the Eli Lilly cases, EDPA would still be the most appropriate forum if the Panel Orders a joint, multi-defendant MDL.