**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS      MDL NO. 3094
(GLP-1RAs) PRODUCTS LIABILITY LITIGATION**

<u>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER
OF ACTIONS TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF LOUISIANA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED
OR CONSOLIDATED PRETRIAL PROCEEDINGS**</u>

***<u>Oral Argument Requested</u>***

Dated: January 5, 2024

**MORGAN & MORGAN, P.A.**

T. Michael Morgan
MORGAN & MORGAN, P.A.
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Phone: (407) 420-1414
Email: mmorgan@forthepeople.com

**Attorneys for Plaintiffs Jaclyn Bjorklund et al.**

## Table of Contents

INTRODUCTION ....................................................................................................................... 1

THE WESTERN DISTRICT OF LOUISIANA IS THE BEST FORUM. ................................................ 1

    A.  Judge Cain has the most experience with GLP-1RA cases. .................................... 4

    B.  Judge Cain is well suited to manage an MDL. ....................................................... 5

    C.  The Western District of Louisiana is convenient. .................................................. 7

    D.  Other proposed venues are less suitable. ................................................................ 9

        i.     Middle District of North Carolina ................................................................. 9

        ii.    Eastern District of Pennsylvania.................................................................. 10

        iii.   District of Utah .............................................................................................. 11

        iv.   Southern District of California ..................................................................... 12

        v.     Southern District of Indiana ........................................................................ 14

        vi.   Southern District of New York.................................................................... 14

        vii.  Eastern District of New York ...................................................................... 15

CASES AGAINST ELI LILLY SHOULD BE INCLUDED IN THIS MDL. ................................................ 15

CONCLUSION........................................................................................................................... 20

<u>INTRODUCTION</u>

All Defendants and Plaintiffs support an MDL for claims involving Novo Nordisk's GLP-1RAs. The only issues raised in response to the motion to transfer are whether the Western District of Louisiana is the appropriate forum and whether to include cases against Eli Lilly.

Contrary to arguments by the Defendants and one law firm representing five Plaintiffs that other transferee forums are superior, the Western District of Louisiana is the most appropriate venue. Defendants and opposing Plaintiffs disregard the advanced procedural posture of *Bjorklund* and Defendants' connections to Louisiana. Moreover, the overwhelming majority of Plaintiffs favor centralization in the Western District of Louisiana.[1]

<u>THE WESTERN DISTRICT OF LOUISIANA IS THE BEST FORUM.</u>

The specific facts and circumstances of the GLP-1RA litigation weigh in favor of selection of the Western District of Louisiana. The Western District of Louisiana has more related actions than any other district, no pending MDLs, no backlog of cases, and only one judicial vacancy:

| Proposed Venues | Related Actions | Plaintiffs Residing in District | Currently Pending MDLs | % of Pending Civil Cases More than 3 Years Old | Judgeships | Current Judicial Vacancies | Pending Cases[2] |
|---|---|---|---|---|---|---|---|
| W.D. La. | 11 | 11 | 0 | 11.2 | 7 | 1 | 5,007 |
| E.D. Pa. | 9 | 1-2 | 9 | 29.7 | 22 | 2 | 8,090 |
| E.D.N.Y. | 1 | 1 | 3 | 19.8 | 15 | 0 | 13,110 |
| M.D.N.C. | 0 | 0 | 1 | 4.7 | 4 | 0 | 1,479 |

---

[1] Lewis' Response (Dkt. 44) p. 2; Jones' Response (Dkt. 46) p. 1; Huffman's Response (Dkt. 47) p. 1; King's Response (Dkt. 48) p. 1; Smith's Response (Dkt. 49) p. 9. Although two Plaintiffs asked for transfer to the Eastern District of New York, they agree that the Western District of Louisiana would be appropriate. McDonald & Andino's Response (Dkt. 53) p. 3.

[2] *See* Current Judicial Vacancies (https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies) (visited Jan. 2, 2023); MDL Statistics Report (Jan. 2, 2024) (https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-2-2024.pdf) (visited Jan. 2, 2024); Federal Court Management Statistics-Profiles (Sept. 30, 2023) (https://www.uscourts.gov/file/76945/download) (visited Jan. 2, 2024).

| | | | | | | |
|---|---|---|---|---|---|---|
| S.D. Ind. | 0 | 0 | 1 | 51.4 | 5 | 0 | 11,488 |
| D. Utah | 1 | 1 | 0 | 15.3 | 5 | 1 | 2,509 |
| S.D. Cal. | 0 | 0 | 3 | 16.3 | 13 | 2 | 5,183 |
| S.D.N.Y. | 0 | 0 | 11 | 26.2 | 28 | 1 | 17,676 |

Further, the district has a notably high ratio of terminated cases to weighted filings:

| Proposed Venue | Weighted Filings Per Judgeship | Terminated Cases Per Judgeship | Ratio of Terminated Cases to Weighted Filings[3] |
|---|---|---|---|
| W.D. La. | 388 | 706 | 1.82 |
| E.D. Pa. | 269 | 404 | 1.5 |
| E.D.N.Y. | 594 | 620 | 1.04 |
| M.D.N.C. | 361 | 460 | 1.27 |
| S.D. Ind. | 630 | 728 | 1.16 |
| D. Utah | 442 | 453 | 1.02 |
| S.D. Cal. | 458 | 585 | 1.28 |
| S.D.N.Y. | 534 | 465 | 0.87 |

The district is also at the center of this litigation. Eleven cases are in the district, as well as one in the Eastern District of Louisiana, seven in neighboring Mississippi and four in nearby Oklahoma. The fact that numerous Plaintiffs, physicians, and fact witnesses are located in Louisiana strongly supports the Western District of Louisiana as the appropriate forum. *See In re DePuy Orthopaedics*, 753 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010). It is likely that Louisiana will remain a central location for litigation against manufacturers of GLP-1RAs. The state has the second highest prevalence of obesity (nearby states of Mississippi, Alabama, and Oklahoma have similarly high obesity prevalence levels) and fourth highest rate of diabetes in the country:[4]

| State | Rate of Obesity | Rate of Diagnosed Diabetes |
|---|---|---|
| Louisiana | 2nd | 4th |
| Mississippi | 4th | 1st |
| Alabama | 6th | 2nd |

---

[3] *See id.*

[4] https://www.cdc.gov/obesity/data/prevalence-maps.html (accessed 1/5/24); https://gis.cdc.gov/grasp/diabetes/diabetesatlas-surveillance.html# (accessed 1/5/24).

| Oklahoma | 3rd | 9th |
|---|---|---|

In contrast, Pennsylvania is 29th in rate of obesity and 27th in rate of diagnosed diabetes.

It is thus no surprise that GLP-1RA prescriptions have risen in Louisiana and the surrounding states. Indeed, Lake Charles is the top 20 areas in the U.S. for rising Ozempic prescriptions and several of the other cities on the list are within nearby states of Alabama, Mississippi, Missouri, and Texas.[5] In addition, Louisiana's Medicaid covers many GLP1-RAs, leading to much higher rates of prescriptions by Medicaid recipients than other proposed venues:

| State | Ozempic Prescriptions | Mounjaro Prescriptions | GLP-1RA Prescriptions per 100 Recipients[6] |
|---|---|---|---|
| LA | 104,876 | 25,608 | 12.28 |
| NC | 42,488 | 5,127 | 4.27 |
| PA | 0 | 0 | 5.61 |
| CA | 0 | 0 | 0.93 |
| NY | 248,036 | 22,860 | 6.50 |
| UT | 0 | 0 | 1.75 |
| IN | 0 | 0 | 2.31 |

Further, both Novo Nordisk and Eli Lilly have offices in nearby Baton Rouge, and Eli Lilly also has an office in Mandeville, Louisiana.[7] Both Novo Nordisk and Eli Lilly also conduct clinical trials in Louisiana. Eli Lilly is currently recruiting participants in Lake Charles for multiple clinical

---

[5] Becker's Hospital Review, "Cities where Ozempic prescriptions have risen the most" (Feb. 25, 2023) (https://www.beckershospitalreview.com/pharmacy/cities-where-ozempic-prescriptions-have-risen-the-most.html) (accessed 1/5/24).

[6]*See* Ex. 1: State Drug Utilization Data (Quarters 1-3, 2023) (from https://data.medicaid.gov/dataset/d890d3a9-6b00-43fd-8b31-fcba4c8e2909) (data downloaded 1/5/24); *September 2023 Medicaid & CHIP Enrollment Data Highlights* (https://www.medicaid.gov/medicaid/program-information/medicaid-and-chip-enrollment-data/report-highlights/index.html (visited 1/5/24).

[7] *See* Exs. 2-3: Eli Lilly & Novo Nordisk La. SOS Search Results (search conducted 1/3/24).

trials,[8] and Novo Nordisk is conducting a clinical trial on semaglutide in Baton Rouge.[9] Such a constellation of activity is absent in any alternative venue. *See id*.

**A. Judge Cain has the most experience with GLP-1RA cases.**

Though of course only recent, the fact remains that no other judge has as much experience as Judge Cain in gastrointestinal-related injury cases involving GLP1-RAs. Judge Cain has been assigned to seven GLP-1RA gastrointestinal injury cases, including the first filed in the country—*Bjorklund*—a case involving Novo Nordisk and Eli Lilly. Judge Cain has diligently moved cases forward, holding Rule 16 conferences in *Bjorklund* and *Breaux*, adopting a scheduling order in *Bjorklund*, and setting trial for *Bjorklund* in February 2026 and for *Breaux* in September 2026. He has also given the *Bjorklund* parties until January 17, 2024, to submit a joint proposed preservation order, ESI and Protective Orders. The *Breaux* parties have filed a joint proposed scheduling order.

Judge Cain also carefully considered motions to dismiss by Novo Nordisk and Eli Lilly, denying dismissal of the failure-to-warn claims and granting dismissal of the warranty claims. *Bjorklund v. Novo Nordisk A/S,* 2023 WL 8528445 (W.D. La. Dec. 8, 2023); *Bjorklund v. Novo Nordisk, A/S,* 2023 WL 8584961 (W.D. La. Dec. 11, 2023); *Breaux v. Novo Nordisk, Inc.,* 2023 WL 8606799 (W.D. La. Dec. 12, 2023)*.* The *Bjorklund* parties are currently briefing a motion to dismiss by the Denmark-based Novo entities, which will be fully briefed by the time this matter is before the Panel. Plaintiffs have also served Rule 26(a)(1) disclosures. Thus, *Bjorklund* is by far

---

[8] *See* Ex. 4: Search for clinical trials in Lake Charles via Eli Lilly's website (conducted 1/3/24) (dozens of results, including multiple with enrolling sites "0 miles away").

[9] *See* Ex. 5: *A Research Study on How Well Semaglutide Helps Children and Teenagers With Excess Body Weight Lose Weight,* ClinicalTrials.gov (visited Jan. 3, 2024) (listing Novo Nordisk A/S as sponsor and "Responsible Party" and listing recruiting sites in Baton Rouge and Monroe).

the most procedurally advanced case.[10]

**B. Judge Cain is well suited to manage an MDL.**

Judge Cain's exposure to complex, multi-plaintiff litigation, coupled with his decades of experience in private practice and a heavy load of cases during several years of judicial service, make him the best choice to oversee these cases. After Hurricane Delta and Hurricane Laura devastated Lake Charles in 2020, policyholders sought relief against several insurers. Residential and commercial policyholders filed first-party insurance cases in Judge Cain's court; he has presided over nearly 7,000 hurricane cases.[11] Judge Cain's experience is extensive, overseeing 22% of all U.S. insurance cases filed in 2022.[12] Due to Judge Cain's diligence and attention to these thousands of cases, over half of the cases resolved by March 2023. *In re McClenny Moseley & Assocs. PLLC*, 2023 WL 2954435, at *1 (W.D. La. Mar. 4, 2023). Accordingly, the Western

---

[10] *See In re Insulin Pricing*, 2023 WL 5065090, at *3 (J.P.M.L. August 3, 2023) ("… Honorable Brian R. Martinotti … presides over the three most advanced actions…. His familiarity with the issues in this litigation will serve to maximize the efficient conduct of pretrial proceedings."); *In re Dicamba*, 289 F. Supp. 3d 1345, 1347 (J.P.M.L. 2018) ("Judge Stephen N. Limbaugh, Jr. … already is presiding over the two earliest-filed actions in this litigation."); *In re Onglyza*, 289 F. Supp. 3d 1357, 1359 (J.P.M.L. 2018) ("The longest-pending action (Taylor) is proceeding apace in this district."); *In re Johnson & Johnson Talcum Powder*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) ("[A]s Judge Wolfson is presiding over the most procedurally-advanced action (*Chakalos*), she is well situated to structure this litigation so as to minimize delay and avoid unnecessary duplication of discovery and motion practice."); *In re Genetech Herceptin (Trastuzumab)*, 178 F. Supp. 3d 1374, 1376 (J.P.M.L. 2016) ("The first-filed and most procedurally advanced action is pending in that district…. The Honorable Terence C. Kern has presided over the action pending in this district for nearly a year, and thus has developed some familiarity with both the issues in this litigation and with counsel."); *In re Glaceau Vitamin Water*, 764 F. Supp. 2d 1349, 1351 (J.P.M.L. 2011).

[11] *Federal insurance litigation in Louisiana tops in U.S., new report finds*, Louisiana Record (June 15, 2023) (https://louisianarecord.com/stories/644285105-federal-insurance-litigation-in-louisiana-tops-in-u-s-new-report-finds) (accessed 12/26/23).

[12] *See In re McClenny Moseley & Assocs. PLLC*, 2023 WL 2954435, at *1 (W.D. La. Mar. 4, 2023); *Ins. Lawsuits Skyrocket in Communities Hit Hard by Extreme Weather Events*, Syracuse U. Trans. Records Access Clearinghouse (https://trac.syr.edu/reports/700/) (accessed 12/26/23).

District of Louisiana has recently terminated nearly 5,000 cases.[13] Moreover, Judge Cain has sat

by designation in the Ninth Circuit Court of Appeals. *See e.g.*, *Lemmon v. Snap*, 995 F.3d 1085, *

(9th Cir. 2021).

The Western District of Louisiana did not emerge based on a post hoc venue and filings,

but because the first case, retained only days before it was filed, needed to be filed quickly due to

statute of limitations concerns. It can categorically be said that neither the district nor the division,

let alone Judge Cain, who was completely unknown to Bjorklund's counsel by experience or even

name, was 'selected' by Bjorklund's counsel; it was selected by necessity. In contrast, every venue

urged by the Defendants was chosen without any reason related to the existing litigation. Even the

few Plaintiffs urging EDPA selected it and filed cases for Plaintiffs who have nothing to do with

the jurisdiction. The litigation before Judge Cain has proceeded organically and because there are

so many potential plaintiffs in the one-year statute of limitations state of Louisiana, more cases

were filed there and will continue to be.[14] Ultimately, Judge Cain's attention to the cases, bench

demeanor, and judicious consideration of early issues, revealed qualities that seemed appropriate

for seeking an MDL before him for all sides.[15] There can be no dispute that the rulings and

decisions Judge Cain has issued so far have been quite balanced and have also reflected an

understanding of what might be helpful to the expeditious handling of these cases in an MDL

wherever it may reside. Judge Cain's ability and desire to focus on a litigation of this size seem

clear to the vast majority of Plaintiffs' counsel who have filed cases. It is also worth noting that

---

[13] https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf (visited 1/3/24).

[14] Most states have considerably longer statutes of limitations, and Kentucky and Tennessee are the only other states with a one-year statute of limitations for product liability cases.

[15] Petitioner has no reason to believe that Judge Cain would not be interested in this MDL; rather, Petitioner has inferred that he would be interested and certainly he is suited for it.

Plaintiffs' counsel, but apparently not Defendants' counsel, respect and appreciate Judge Cain's strong approach to ensure that plaintiffs' claims before him are legitimate ones.[16] No one benefits when, in a large-scale litigation, cases are not vetted. This is an important issue in any mass tort MDL and in the hurricane litigation Judge Cain demonstrated that the issue will be addressed. In any event, Defendants cannot deny the balance of his approach thus far. He has been efficient, attentive and focused in the same way, as we have learned, that he was in handling 7,000 hurricane cases.

Here, Judge Cain has the resources to oversee an MDL. *In re Tasigna*, 555 F. Supp. 3d 1363, 1365 (J.P.M.L. 2021). Judge Cain has gained the experience to manage these cases efficiently and has begun evaluating the issues posed by these cases. *See In re*: *Roundup*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016). And he could "steer this litigation on a prudent course." *In re Tasigna*, 555 F. Supp. 3d at 1365. Further, as Eli Lilly correctly points out, the Panel has a policy "of providing MDL experience to a broader net of judges" and should do so by assigning this MDL to "a skilled jurist who has not yet had the opportunity to preside over an MDL." Dkt. 58 at 14 (citing *In re Gardasil,* 619 F. Supp. 3d 1356, 1358 (J.P.M.L. 2022)).

## C.  The Western District of Louisiana is convenient.

Defendants claim that the Western District of Louisiana is inconvenient for them, but—as noted above—Defendants have offices in Louisiana and are conducting clinical trials there. Moreover, Defendants are multi-billion-dollar companies that sell pharmaceutical drugs and products throughout the United States, including the Western District Louisiana.

In fact, in at least one other MDL, Eli Lilly made the same arguments supporting Western

---

[16] Last year, Judge Cain suspended a Plaintiff law firm for 90 days for filing frivolous hurricane cases. *In re McClenny Moseley & Assocs.*, 2023 WL 2954731, at *2 (W.D. La. Mar. 4, 2023).

District of Louisiana that the moving Plaintiffs are making for Judge Cain in this case. *See In re: Actos,* 840 F. Supp. 2d 1356, 1356 (J.P.M.L. 2011) ("We are persuaded that the Western District of Louisiana is an appropriate transferee district ... [C]entralization in the Western District of Louisiana permits the Panel to assign the litigation to an experienced judge who sits in a district in which no other multidistrict litigation is pending."). In that case, Eli Lilly pointed out that "16 actions ha[d] been filed in the Western District of Louisiana, more than in any other district court," and that ten of those actions had been assigned to the same judge. *In re Actos,* MDL 2299, Dkt. 34 at 9-10. Eli Lilly argued that "[t]hese are factors the Panel often considers when assigning MDLs." *Id.* (citing *In re Air Crash Near Athens, Greece,* 435 F. Supp. 2d 1340, 1342 (J.P.M.L. 2006)). Eli Lilly's arguments in *Actos* fully support the moving Plaintiffs' position that the Western District of Louisiana is appropriate here.

Novo Nordisk also claims that there are limited lodging options in Lake Charles, but there are 28 hotels within five miles of the Lake Charles courthouse and another 11 hotels within ten miles.[17] Defendants bemoan the possibility of taking a connecting flight to reach Lake Charles— yet they advocate for the Southern District of California, which would require a transcontinental flight from Novo Nordisk's U.S. headquarters in New Jersey and would require a connecting flight from Eli Lilly's headquarters in Indianapolis. Likewise, the Middle District of North Carolina would also require a connecting flight from Indianapolis. With Lake Charles, Defendants can simply connect through Dallas or Houston to reach the Lake Charles airport.

Last, according to Eli Lilly, "the judicial vacancies in the Western District of Louisiana are currently designated as a 'judicial emergency.'" Dkt. 58 p. 18. Contrary to Eli Lilly's assertion,

---

[17]On January 4, 2024, Counsel for Moving Plaintiffs searched Hotels.com for this information.

there is a single judicial vacancy in this district.[18] Furthermore, Eli Lilly's "judicial emergencies" argument is based on outdated data for 1,125 "weighted filings per judgeship." That number has recently plummeted to only 388 as the district has terminated nearly 5,000 cases,[19] and it is expected that the number of cases will drop much lower as the last hurricane cases resolve. In sum, the statistics show that the Western District of Louisiana can manage this litigation.

### D.  Other proposed venues are less suitable.

#### i.  Middle District of North Carolina

Novo Nordisk proposes the Middle District of North Carolina, but there are no cases there—or even in the four neighboring states. Novo Nordisk emphasizes that Defendants have manufacturing facilities in North Carolina, but an MDL would involve **failure-to-warn** claims and Defendants do not claim that they made any labeling decisions in North Carolina. Novo Nordisk cites inapposite cases involving manufacturing defects and contamination,[20] but an inadequate warning case is not remotely analogous to a defective aircraft or a contaminated product.

It does not appear that Eli Lilly has manufactured much of anything in North Carolina—as that facility is brand new. As Eli Lilly explained in February 2023:

Major production sites include Indianapolis, Indiana; Carolina, Puerto Rico; and Branchburg, New Jersey. In 2023, we expect production to commence ... in Durham, North Carolina...[21]

---

[18] *See* https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies/judicial-emergency-definition (visited 1/3/2024).

[19] https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf (visited 1/3/2024).

[20] *See In re ConAgra Peanut Butter Prods*., 495 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007) ("the manufacturing plant where the contamination occurred and the government agency that investigated the contamination are located there"); *In re Air Crash Disaster at Paris, France on March 3, 1974*, 376 F. Supp. 887, 888 (J.P.M.L. 1974) ("the majority of the discovery in this litigation will focus on the design and manufacture of the aircraft"); *In re Am. Honda Motor Co*., *CR-V Vibration Mktg. & Sales Practices Litig*., 140 F. Supp. 3d 1336, 1337 n.4 (J.P.M.L. 2015).

[21] Eli Lilly 2022 Annual Report on 10-K at p. 34 (accessed 1/5/24) (https://www.annualreports.com/HostedData/AnnualReports/PDF/NYSE_LLY_2022.pdf).

For Novo Nordisk, the label lists the Denmark-based "Novo Nordisk A/S" as the manufacturer and not any U.S. entity, and the FDA has noted that the Denmark "facility is responsible for the assembly, labelling and packaging" of Ozempic.[22]

In sum, it is entirely unclear why Novo Nordisk suggests the Middle District of North Carolina in this case. Revealingly, however, Novo's unusual request does tell us that flying into an airport hub, Charlotte, and then travelling by a short flight to other cities (Raleigh-Durham or Winston-Salem) or driving (there are no flights) a couple of hours (to Greensboro) is actually *not* an inconvenient situation for the Novo Defendants.

### ii.  Eastern District of Pennsylvania

Five plaintiffs out of 44 propose the Eastern District of Pennsylvania, but as Defendants point out, most of the Pennsylvania *cases* do not involve Pennsylvania *Plaintiffs*. Moreover, no Defendant resides in Pennsylvania, this district already has nine pending MDLs, and 29.7% of the cases in the district are more than three years old. Out of nine Pennsylvania cases, only three involve a Pennsylvania Plaintiff and only one or two live in the Eastern District:

| PLAINTIFF | RESIDENCE |
|---|---|
| Ursula Brown | Western District of Pennsylvania (Pittsburgh) |
| Billie Farley | West Virginia |
| Sandra Geiglein | Maryland |
| Michelle Gray | Alabama |
| Sarah Hammons | Arkansas |
| Laura Marrero | Pennsylvania (district of residence unknown) |
| Angela Mayer | Minnesota |
| Kelly Miller | Eastern District of Pennsylvania (Reading) |
| Roderick Shirley | Florida |

The six non-Pennsylvania residents do not even live in the Third Circuit, but live in the Fourth,

---

[22] Ozempic Label (https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/209637s020s021lbl.pdf) (accessed 1/5/24); Ex. 6: FDA Review regarding Ozempic at 3 (July 28, 2017).

Eighth, and Eleventh Circuits. The ties between these pending cases and the Philadelphia Division of the Eastern District of Pennsylvania are insubstantial. There will be many more cases filed and surely many from Pennsylvania. But, the fact remains that the Eastern District of Pennsylvania venue being sought has no ties to the cases but for them being filed there.

It is worth noting that most of the EDPA cases were filed subsequent to the instant petition. Further, although most cases in the district are before Judge Beetlestone, the first case in the district (*Miller*) was actually assigned to Judge Perez on October 10, 2023. However, when the second case (*Brown*) was filed on December 7, 2023, the Civil Cover Sheet section on "Related Case(s)" was left blank and did not indicate the existence of the Miller case before Judge Perez. Ex. 8 (Brown Civil Cover Sheet). As a result, *Brown* was not assigned to Judge Perez as it would have been if the Cover Sheet had been properly filled out, but instead to Judge Beetlestone. The Cover Sheets in the subsequent cases listed *Brown* as a related action and did not mention *Miller*, so the subsequent cases were assigned to Judge Beetlestone and not to Judge Perez. Ex. 9 (*Farley*, *Geiglen*, and *Shirley* Docket Sheets). Accordingly, while there will be in the future an MDL appropriate for EDPA, that venue has not emerged organically here and there really are no reasons to put this MDL there other than that a few Plaintiff firms have requested it. And it cannot be overlooked that as of now, there are several active MDLs pending in that Court.[23]

For each of these reasons, then, the Western District of Louisiana is a superior venue to the Eastern District of Pennsylvania.

### iii.  District of Utah

Eli Lilly seeks the District of Utah as one of several alternative transferee courts. However, no other party has suggested this district, where there is only a single related action pending. That

---

[23] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-2-2024.pdf (last visited 1/3/2024).

case, *Olsen v. Novo Nordisk A/S et al*., No. 2:23-cv-00844-DBB (D. Utah Nov. 16, 2023), has seen

no activity. The lack of relation of GLP1-RA litigation to the District of Utah is reflected by the

fact the primary basis offered by Eli Lilly for suggesting the district is merely that Salt Lake City

is readily accessible by major airlines. Although not an airline hub like Salt Lake City, Lake

Charles is more convenient than a transcontinental flight.

Eli Lilly also proffers that the District of Utah is underutilized for MDL proceedings in that

there is no MDL pending in the district and has not been for several years. However, this factor

equally supports the Western District of Louisiana, where the most GLP1-RA cases are pending,

and which also lacks an MDL proceeding. If a district is to be chosen as the transferee court on the

basis of lacking an MDL, the Western District of Louisiana is an appropriate choice.

### iv.  Southern District of California

No Plaintiff supports transfer to the Southern District of California. The Southern District

of California is Novo Nordisk's second choice for venue and Eli Lilly's fourth choice. In their

endorsement of the Southern District of California, the Defendants discuss the *Incretin Mimetics*

MDL at length. However, *Incretin Mimetics* involved different drugs (Janumet, Januvia, Byetta,

and Victoza), different injuries (pancreatic cancer), different labels (for the corresponding drugs),

and other manufacturers (including Merck Sharp & Dohme Corp. and Amylin Pharmaceuticals,

LLC). *See In re: Incretin Mimetics*, 968 F. Supp. 2d 1345, 1346, n.2 (J.P.M.L. 2013). Thus, Judge

Battaglia's familiarity with *Incretin Mimetics* is irrelevant. Unlike Judge Cain, Judge Battaglia has

no experience with the gastrointestinal injuries claimed here, the drugs at issue in this MDL, or the

labels at issue in this MDL. Nor are there any cases there.

Defendants advocate for Judge Battaglia because he "successfully resolved all the cases

with finality," in that Judge Battaglia entered a *Daubert* and summary judgment order in favor of

defendants dismissing all cases. *See In re Incretin-Based Therapies,* 142 F. Supp. 3d 1108, 1132

(S.D. Cal. 2015), *vacated and remanded,* 721 F. App'x 580 (9th Cir. 2017), *and adhered to,* 524 F. Supp. 3d 1007 (S.D. Cal. 2021). For purposes of determining the preferred venue for this case, Defendants' urging of Judge Battaglia should not carry weight in the face of very different facts here: These are different drugs; they were launched *years* after the incretin MDL was formed and even longer after the drugs there were approved and launched; the entire time period of FDA approval and the marketing here is different and barely overlaps with the prior drugs, if at all; these drugs were developed and launched by different manufacturers; these drugs were marketed in an unprecedented way for off and on label weight loss, resulting in a cultural craze; the drugs have caused devastating injuries to thousands, injuries that have been ignored by the Defendants; and the injuries do not include pancreatitis and related pancreatic injuries as in the incretin MDL. There are currently no related actions pending on the west coast much less California and no defendant resides on the west coast.[24] (California ranks 46th in rate of obesity.) Lastly, California is simply not as convenient for the parties as the Western District of Louisiana, which is a 30-minute flight from two of the largest airports in the nation, no one involved in this case is more than one time zone and 3.5 hours of plane travel from the Western District of Louisiana.

In addition, the Southern District of California currently has three pending MDLs and two vacancies.[25] Finally, the Panel assigned *Incretin Mimetics* to Judge Battaglia primarily because he was already handling a significant number of related actions, including the first filed action. 968

---

[24] Eli Lilly states that "Plaintiffs reside throughout the United States, including ... California," but a review of the related actions revealed no such case. Thus, California is a venue selection without any basis that emerges from the currently filed cases, or any other facts.

[25]*See* Pending MDLs by District (Jan. 2, 2024) (https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-2-2024.pdf) (visited Jan. 3, 2024); Current Judicial Vacancies (updated Jan. 3, 2024) (https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (visited Jan. 3, 2024).

F. Supp. 2d at 1347. The same is true here for Judge Cain. The Panel should follow the reasoning of the *Incretin Mimetics* transfer order and assign this MDL to Judge Cain.

### v.   Southern District of Indiana

Only Eli Lilly supports the Southern District of Indiana. However, the district is experiencing a significant backlog of cases, with a staggering 2,298 pending cases per judgeship, compared to the Western District of Louisiana's 715.[26] Further, more than half (51.4%) of the cases pending in the Southern District of Indiana are over three years old, compared to only 11.2% in the Western District of Louisiana.[27] Thus, it does not appear that the district has "the capacity to handle th[e] litigation…" *In re Novastar,* 368 F. Supp. 2d 1353, 1354 (J.P.M.L. 2005). Further, there are currently no related actions pending in Indiana, thus it is like Defendants' other forum selections, picked for reasons that have no basis that emerges from the filings that have been occurring over the last 6 months. Finally, Eli Lilly advocates Senior Judge Young, but Judge Young is already handling an MDL and, as Eli Lilly also acknowledges, it is a goal of the Panel to provide "MDL experience to a broader net of judges," including those "who ha[ve] not yet had the opportunity to preside over an MDL." Dkt. 58 p. 14 (quoting *Gardasil,* 619 F. Supp. 3d at 1358).

### vi.   Southern District of New York

Eli Lilly argues, in passing, that if the Panel is considering transfer to the Eastern District of Pennsylvania, the "better option" is the Southern District of New York. Dkt. 58 p. 18. The Southern District of New York, however, is Eli Lilly's fifth choice for venue, and no other party supports this district. Apart from cursory arguments on the convenience of the Southern District and the quality of its judges, Eli Lilly offers little reason why the Panel should consider this venue.

---

[26] *See* Federal Court Management Statistics-Profiles (Sept. 30, 2023) (for twelve-month period ending Sept. 30, 2023) (https://www.uscourts.gov/file/76945/download) (visited Jan. 2, 2024).
[27] *See id.*

Lastly, the absence of any cases in the district further shows why the Panel should not choose that district, which already has eleven pending MDLs, a high number (534) of weighted cases per judgeship, and over 17,000 pending cases—26.2% of which are more than three years old.[28]

### vii.   Eastern District of New York

Plaintiffs McDonald and Andino have observed that the Panel could transfer these cases to the Eastern District of New York.[29] Compared to the Western District of Louisiana, however, little activity has occurred in the Eastern District of New York; only one case is pending there. No other Plaintiffs have proposed this venue. Nor have Defendants argued for this Court. More importantly, these two Plaintiffs agree that Judge Cain "is an appropriate and experienced jurist to oversee this MDL." *Id*. Given the proceedings before Judge Cain, the Panel should decline to transfer these cases to the Eastern District of New York.

### CASES AGAINST ELI LILLY SHOULD BE INCLUDED IN THIS MDL.

Eli Lilly and five Plaintiffs (out of 44) contend that an MDL for an entire class of drugs is unworkable, but the Panel has repeatedly rejected this argument. *See In re Proton Pump Inhibitor*, 261 F. Supp. 3d 1351, 1354 (J.P.M.L. 2017); *In re*: *AndroGel*, 24 F. Supp. 3d 1378, 1378 (J.P.M.L. 2014); *In re*: *Incretin Mimetics*, 968 F. Supp. 2d 1345, 1346 (J.P.M.L. 2013); *In re Prempro*, 254 F. Supp. 2d 1366, 1366-67 (J.P.M.L. 2003); *In re Diet Drugs*, 990 F. Supp. 834, 836 (J.P.M.L.

---

[28] Hen, Multidistrict Litigation Manual § 6:8 (2010) ("[T]he Panel will not normally transfer actions to a district in which no action is then pending and the panel clearly considers the number of actions pending in various districts to determine the selection."); Pending MDLs by District (Jan. 2, 2024) (https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-2-2024.pdf) (visited Jan. 3, 2024); Federal Court Management Statistics-Profiles (Sept. 30, 2023) (https://www.uscourts.gov/file/76945/download) (visited Jan. 2, 2024).

[29] McDonald filed suit in the Western District of Louisiana; Andino filed suit in the Eastern District of New York.

1998).[30] This is particularly true here because Plaintiffs allege that gastroparesis, ileus, and intestinal obstructions are  common to the GLP-1RA class.[31] The FDA also puts Eli Lilly's Mounjaro in the same GLP-1RA class with Novo Nordisk's Ozempic, Wegovy, and Trulicity.[32] Even the five Plaintiffs who seek to exclude Eli Lilly from an MDL agree that the risk is common to the class of GLP-1RAs[33] and cite medical literature involving Eli Lilly's dulaglutide as evidence of the risk from Novo Nordisk's GLP-1RAs.[34] Likewise, Eli Lilly acknowledges that GLP-1RA drugs share a common safety profile.[35] It is no surprise then that all cases share common facts:

(1) Plaintiff was prescribed a GLP-1RA;

(2) Defendants knew or should have known of the serious, debilitating risk of gastrointestinal paralysis and obstruction that are common to the class of GLP-1RA drugs;

(3) Defendants failed to adequately warn prescribing physicians about the severity and the extent of these risks posed by their GLP-1RA drugs;

(4) Had Defendants adequately warned of the risks of GLP-1RA drugs, these doctors either would have altered their prescribing practices, declined to prescribe the drugs in question, or more closely monitored patients taking these drugs and then discontinued the drugs;

(5) Plaintiff took a GLP-1RA medication as prescribed; and

---

[30] Denying Plaintiffs' motion, however, "likely would delay the resolution of the common core issues in this litigation." *In re*: *AndroGel*, 24 F. Supp. 3d at 1379.

[31] *See, e.g.,* Dkt. 1-12, *Hotchkiss* Complaint ¶ 47.

[32] *See* April - June 2022 | Potential Signals of Serious Risks/New Safety Information Identified by the FDA Adverse Event Reporting System (FAERS) (https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/april-june-2022-potential-signals-serious-risksnew-safety-information-identified-fda-adverse-event) (last visited Jan. 5, 2024).

[34] *See e.g.,* Dkt. 1-20, *Miller* Complaint at ¶¶ 179, 185-86, 188, 190-92, 196-98.

[34] *See e.g.,* Dkt. 1-20, *Miller* Complaint at ¶¶ 179, 185-86, 188, 190-92, 196-98.

[35] *See News Release: Trulicity (dulaglutide) is the first and only type 2 diabetes medicine approved to reduce cardiovascular events in adults with and without established cardiovascular disease,* Eli Lilly (Feb. 21, 2020) (https://investor.lilly.com/news-releases/news-release-details/trulicityr-dulaglutide-first-and-only-type-2-diabetes-medicine) (visited Nov. 15, 2023) ("Trulicity's safety profile [is] consistent with the GLP-1 receptor agonist (RA) class ....").

(6) Plaintiff suffered gastrointestinal paralysis or obstruction as a result of taking a GLP-1RA.[36]

In circumstances with similar factual overlap, the Panel has consistently ordered centralization.[37]

Centralization will allow these issues to be resolved efficiently and effectively. Indeed, the

transferee Court can "employ any number of techniques ... to manage pretrial proceedings

efficiently." *In re Proton Pump Inhibitor*, 261 F. Supp. 3d at 1354 (citation & footnote omitted).

Eli Lilly cases have been filed in seven districts and are assigned to nine judges. Excluding

cases that only involve Eli Lilly would duplicate discovery in multiple courts and risk inconsistent

rulings on general causation and *Daubert* motions against identical experts. In addition, given the

fact that the Plaintiffs' injuries are common to the class of GLP-1RA drugs, all medical literature

about the risk—whether involving an Eli Lilly drug or a Novo Nordisk drug—supports general

causation and knowledge by both manufacturers, so the evidence will substantially overlap.[38]

Moreover, many users GLP-1RAs have used multiple drugs in the class. Indeed, eleven

Plaintiffs have identified multiple GLP-1RAs in their complaints and five sued both Novo Nordisk

and Eli Lilly.[39] Excluding Novo Nordisk cases that involve Eli Lilly risks inconsistent rulings on

---

[36] "[T]ransfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Zyprexa*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004); *see also In re Denture Cream*, 624 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009).
[37] *See In re Proton Pump Inhibitor*, 261 F. Supp. 3d at 1354; *In re*: *AndroGel*, 24 F. Supp. 3d at 1378; *In re*: *Incretin Mimetics*, 968 F. Supp. 2d at 1346; *In re Prempro*, 254 F. Supp. 2d at 1366-67; *In re Diet Drugs*, 990 F. Supp. at 836.
[38] Eli Lilly contends that differences in each Plaintiff's medical records militate against centralization. However, such minor factual differences "have not been an impediment to centralization in the past." *In re Wright Med. Tech.*, *Inc. Conserve Hip Implants*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012); *In re Avandia*, 543 F. Supp. 2d 1376, 1378 (J.P.M.L. 2008).
[40] Eli Lilly and opposing Plaintiffs cite *In re Invokana,* 223 F. Supp. 3d 1345 (J.P.M.L 2016), to argue against consolidating claims against competitors. However, *Invokana* is clearly distinguishable, as the excluded defendants' drugs were implicated in only 15% (or less) of cases and only 3% of cases involved use of more than one drug in the class. *Id.* at 1347-348. By contrast, Eli Lilly's drugs are implicated in 22.7% of the related actions and 25% of Plaintiffs have taken multiple GLP1-RAs. Eli Lilly's other cases are similarly distinguishable. For

every major dispute during discovery, summary judgment motion practice, and evidentiary

objections. *In re Pradaxa (Dabigatran Etexilate) Prods*. *Liab*. *Litig*., 883 F. Supp. 2d 1355, 1356

(J.P.M.L. 2012); *In re Wireless Tel*. *Servs*. *Antitrust Litig*., 249 F. Supp. 2d 1379, 1380 (J.P.M.L.

2003). Notably, Novo Nordisk notes the efficiency benefits of consolidation and does not support

such severance of its cases. Centralization will prevent such duplicative discovery and inconsistent

rulings. *In re Pradaxa (Dabigatran Etexilate) Prods*. *Liab*. *Litig*., 883 F. Supp. 2d 1355, 1356

(J.P.M.L. 2012); *In re Wireless Tel*. *Servs*. *Antitrust Litig*., 249 F. Supp. 2d 1379, 1380 (J.P.M.L.

2003).[40]

Contrary to Eli Lilly's assertions, the ten cases against it (22.7% of related actions) are not

"afterthoughts" to the claims against Novo Nordisk. Dkt. 58 at 5. Cases against Eli Lilly will

continue to be filed. An informal survey indicates that the currently involved law firms are

investigating nearly two thousand additional cases of clients who took Eli Lilly GLP-1RA

medications and who have advised that they suffered stomach and intestinal paralysis for which

---

example, in *In re Watson Fentanyl Patch,* 883 F.Supp.2d 1350, 1351 (J.P.M.L. 2012), it was the
defendant who sought to bring in other manufacturers, and the competitors' products employed
the "design that plaintiffs contend is a safer alternative to the Watson reservoir design…."
Further, in *In re Aredia and Zometa,* 429 F. Supp. 2d 1371, 1372 (J.P.M.L. 2006), which
involved prescription cancer treatment drugs, the Panel held that similar claims involving over
the counter osteoporosis drugs did not share "any common questions of fact…"
[40] Eli Lilly and opposing Plaintiffs cite *In re Invokana,* 223 F. Supp. 3d 1345 (J.P.M.L 2016), to
argue against consolidating claims against competitors. However, *Invokana* is clearly
distinguishable, as the excluded defendants' drugs were implicated in only 15% (or less) of cases
and only 3% of cases involved use of more than one drug in the class. *Id.* at 1347-348. By
contrast, Eli Lilly's drugs are implicated in 22.7% of the related actions and 25% of Plaintiffs
have taken multiple GLP1-RAs. Eli Lilly's other cases are similarly distinguishable. For
example, in *In re Watson Fentanyl Patch,* 883 F.Supp.2d 1350, 1351 (J.P.M.L. 2012), it was the
defendant who sought to bring in other manufacturers, and the competitors' products employed
the "design that plaintiffs contend is a safer alternative to the Watson reservoir design…."
Further, in *In re Aredia and Zometa,* 429 F. Supp. 2d 1371, 1372 (J.P.M.L. 2006), which
involved prescription cancer treatment drugs, the Panel held that similar claims involving over
the counter osteoporosis drugs did not share "any common questions of fact…"

they were hospitalized.

Further, informal coordination is not feasible with cases pending against Eli Lilly before nine judges, and Novo Nordisk has indicated that there are "more than 100 different firms seeking additional claims." Dkt. 55 p. 2.[41] As Novo Nordisk has explained, "additional cases ... will likely continue to be[] filed," making informal coordination impractical.[42] *See In re*: *Xarelto*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014); *In re Camp Lejeune*, 763 F. Supp. 2d 1381, 1382 (J.P.M.L. 2011).[43] "Were this litigation smaller, such duplicative discovery and motion practice might be effectively coordinated on an informal basis by the parties and involved courts." *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 190 F. Supp. 3d 1361, 1362 (J.P.M.L. 2016). Given the number of cases and courts, a single Court could "more effectively manage the discovery disputes ... likely to arise, including those relating to discovery from third party witnesses, depositions of apex witnesses, and the scope of relevant discovery, generally." *In re Ahern Rentals,* 481 F. Supp. 3d 1355, 1356 (J.P.M.L. 2020).[44]

---

[41] *In re Generac Solar Power Sys*., 2023 WL 3829305, at *1 (J.P.M.L. June 2, 2023); *In re Onglyza (Saxagliptin) & Kombiglyze XR*, 289 F. Supp. 3d 1357, 1358 (J.P.M.L. 2018); *In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig. (No. II)*, 289 F. Supp. 3d 1335, 1337 (J.P.M.L. 2018); *In re Eliquis*, 282 F. Supp. 3d 1354, 1355 (J.P.M.L. 2017); *In re: Viagra*, 224 F. Supp. 3d 1330, 1331 (J.P.M.L. 2016).

[42] Ex. 7: Novo Nordisk's Memorandum in Support of its Motion to Stay in *Bjorklund,* 2:23-cv-01020 (W.D. La.), Dkt. 71-1 at 3-4(filed Dec. 15, 2023).

[43] *See also Onglyza*, 289 F. Supp. 3d at 1358 ("Informal coordination among 84 cases across the nation does not seem feasible...."); *Sorin*, 289 F. Supp. 3d at 1337 ("There are now 40 actions pending in 21 districts...."); *Eliquis*, 282 F. Supp. 3d at 1355 ("There are now a total of 53 actions pending in 17 districts...."); *Viagra*, 224 F. Supp. 3d at 1331 ("We do not find that informal coordination is an appropriate alternative... Cialis-only actions are pending in nine districts.").

[44] Plaintiffs Kelly Miller et al., in turn, argues that Defendant-specific discovery will be necessary, but the MDL Court can implement procedures to ensure consolidated discovery involving multiple defendants. *In re Proton Pump Inhibitor*, 261 F. Supp. 3d at 1354.

Finally, no Defendant or Plaintiff has sought or consented to transfer under section 1404.[45] On this record, centralization is far preferable to section 1404(a) motions. *See In re Chantix*, 648 F. Supp. 3d 1381, 1832 (J.P.M.L. 2022); *In re Fisher-Price Rock 'N Play Sleeper*, 412 F. Supp. 3d 1357, 1359 (J.P.M.L. 2019). There is simply no evidence that either informal coordination or section 1404(a) motions have worked or will work. *In re Camp Lejeune*, 763 F. Supp. 2d at 1382.

Ultimately, informal coordination is not feasible as cases are before twenty judges, two dozen law firms have filed cases, and more than 100 law firms are soliciting cases. It is not practical to coordinate scheduling and protective orders, discovery productions, corporate depositions, and motion practice across districts across the country. Moreover, there is a substantial risk that judges—and even circuits—may issue inconsistent rulings on identical issues involving the same discovery disputes, the same drugs, the same Defendants, the same injuries, and the same experts. It is, thus, no surprise that Novo Nordisk supports an MDL.

## CONCLUSION

For all of these reasons, Plaintiffs Jaclyn Bjorklund et al. respectfully request that the Panel order coordinated or consolidated pretrial proceedings for the Subject Actions and transfer all pending and future related actions to the Western District of Louisiana before Judge Cain.

---

[45] The objecting Plaintiffs have instead sought "to stay in their chosen venues." *In re Digital Adver. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1377 (J.P.M.L. 2021).

Respectfully submitted,

Dated: January 5, 2024

By: */s/ T. Michael Morgan*
T. Michael Morgan
Morgan & Morgan
20 North Orange Ave. Suite 1600
Orlando, FL 32801
Phone: (407) 420-1414
Facsimile: (407) 245-2289
mmorgan@forthepeople.com

Paul J. Pennock
Morgan & Morgan
350 Fifth Ave, Suite 6705
New York, NY 10118
Phone: (212) 738-6839
Facsimile: (407) 245-3384
ppennock@forthepeople.com

Jonathan M. Sedgh
Morgan & Morgan
350 Fifth Ave, Suite 6705
New York, NY 10118
Phone: (212) 738-6839
jsedgh@forthepeople.com

Josh Autry
Morgan & Morgan
333 W. Vine St, St 1200
Lexington, KY 40507
Phone: (859) 899-8785
jautry@forthepeople.com

*Attorneys for Plaintiffs Jaclyn Bjorklund, Delisa Jones, Jarred Olson, Marliene Salinas, Lia Ritchie, Leigh Decorde, Meredith Hotchkiss, Rodney Muilenburg, Robin Kelly, Blake McClure, Merlon Latham, Donna Thomas, Rebekah King, Sandra Truss, Sharon Arender, Jack Joiner, Kizzy Williams, Brea Hand, and Robert McDonald*